SWEARINGEN et al. v. OLDHAM et al.

No. 31680.    March 27, 1945.

Rehearing Denied June 12, 1945.

*159 P. 2d 247.*

McCollum & McCollum, of Pawnee, for plaintiffs in error.

N. E. McNeill of Tulsa, and E. R. McNeill, of Pawnee, for defendants in error.

Jones & Wesner, of Cordell, for defendant in error Verba Amen.

DAVISON, J. This cause is presented on appeal from the district court of Pawnee county wherein L. D. Oldham and others as defendants obtained judgment determining their interest in the oil and gas and other minerals under a tract of land previously conveyed to their deceased father to be 15/16 and determining that Swearingen and others (plaintiffs) as heirs of the grantor in the instrument of conveyance had retained a 1/16 interest in such oil, gas and minerals. Plaintiffs in error will hereinafter be referred to as plaintiffs and defendants in error as defendants.

The deed executed by Swearingen and his wife in 1925 contained the following provision:

". . . The grantors reserve to themselves one-sixteenth 1/16 of all oil, gas, or other minerals in or under this land but convey unto grantee full rights to lease this land for any purpose and to collect and retain all rentals and bonuses. . . ."

On January 24, 1941, the Oldhams executed a five-year oil and gas lease to the Alma Oil Company under which they were to receive one-eighth of all oil and gas produced on the land subject to division with the Swearingens in accord with their respective interests.

In the following calendar year the oil company became doubtful as to the division of the one-eighth royalty and prepared an agreement to be executed by the interested parties under which it was proposed that such parties agree to a coequal division of one-eighth royalty between the heirs of Swearingen and the grantees in the deed and their heirs.

The heirs of Swearingen were satisfied with the agreement and executed the same. The heirs of Oldham were not satisfied with the same and refused to join in the execution thereof.

On June 11, 1942, this action was instituted by Eva A. Swearingen et al., being all of the heirs of C. W. Swearingen, who deeded the land in 1925 with the reservation heretofore mentioned and quoted. The defendants were the heirs of W. J. Oldham and his cograntee, L. D. Oldham.

Issues on the merits were joined by appropriate pleadings.

The theory of the plaintiffs in presenting their case in the court below was outlined in the opening statement pursuant to inquiry by the trial court. It was then said:

"The Court: Let me ask you, please, Mr. McCollum, is it your theory that the language of the deed is subject to the interpretation which you seek to place on it, or is it your theory that the deed should be reformed to comply with the alleged will of the parties? In other words, I want to know what the issue is which I am going to try. In other words, whether it is a suit to reform a deed, or to interpret a deed.

"Mr. McCollum: Well, under our pleadings, we say that the reservation as it is drawn is sufficient to show the intention of the parties to be what we say it is: That this one-sixteenth is a net one-sixteenth, which is equivalent to saying in a different fractional way, one-half of the customary one-eighth, which is a net interest, but if the court believes that the instrument should be reformed by inserting or adding the expression 'which is a net interest,' why, then, we ask that the instrument be reformed to that effect."

In this court plaintiffs say:

"Plaintiffs in error assert that the reservation in the deed in the case at bar gave to plaintiffs in error a net one-sixteenth of any and all oil and gas produced from the premises covered by said deed; that such one-sixteenth interest was and is a one-sixteenth net interest, free and clear of cost of production . . . a net interest. And that such one-sixteenth net royalty interest was not diminished by defendants in error executing and delivering the oil and gas lease to the Alma Oil Company, under which lease the oil and gas is being produced."

Their first proposition as stated in their brief is:

"Under decision of our court plaintiffs in error have 1/16 of oil and gas if, when and as produced and defendants in error have 1/16 of the oil and gas, if when and as produced."

In support of this position our attention is called to Carroll v. Bowen, 180

Okla. 215, 68 P. 2d 773, and Sykes v. Austin, 182 Okla. 299, 77 P. 2d 719.

In Carroll v. Bowen, supra, we were called upon to determine the legal effect of a reservation or exception contained in a deed reserving "an undivided one-half (½) interest in and to the royalty (the ordinary ⅛ ordinarily left the grantor in oil and gas leases being the royalty above referred to)." In determining the meaning and effect of this reservation, we said:

"We are of the opinion that the clause in question is not ambiguous, and it was error for the court to admit or consider the evidence of Mrs. Bowen. It is our duty to construe the clause in its entirety and to give effect to every word therein. When this is done, we think it is plain that the parties intended the clause to reserve an undivided one-half of the one-eighth royalty. The words in parentheses 'the ordinary ⅛ ordinarily left the grantor in oil and gas leases being the royalty above referred to,' make plain what would have been otherwise ambiguous if those words had not been used. While the term 'royalty' means a share of the product or proceeds therefrom, the percentage is variable. It is always agreed upon in the lease contract. Generally it is one-eighth. In the Osage Reservation, the Department of the Interior exacts a sixth. The state receives a fourth from the wells that adorn the Capitol grounds. If the parties had not inserted the words in parentheses, the instrument would have been indefinite upon the percentage of royalty to be paid by the lessee, but as the amount of the royalty reserved has been defined, such ambiguity has been removed."

In Sykes v. Austin, supra, we were called upon to determine the effect of the conveyance of "one-half of the one-eighth royalty of the oil and gas arising from the land." We held the language to be free from ambiguity and said:

". . . No right became vested in defendant except to receive one-half of the one-eighth of the oil and gas, if, when and as produced, for clearly no conveyance of oil or gas in place (even if possible in this state) was attempted, nor were any mineral rights granted

other than to share in the definite one-eighth royalty. There is no enjoyment of a defined royalty, as used in this sense, until and unless there is a production of that to which the royalty pertains.

"Having held as above, it is manifest that we cannot agree with defendants in their contention that when the lease expired their interest then broadened to a one-half interest in all of the oil and gas rights pertaining to the land, on the theory that the owner of the fee had conveyed to defendant half of all he had. He had a valuable reversionary interest, in case the lessee failed to develop, which he did not convey. He did not convey any of the corpus to defendant nor any mineral right connected therewith, other than the right to receive 'one-half of the one-eighth royalty of the oil and gas arising from the land.' . . ."

We are unable to see where the above authorities are helpful to plaintiffs in error.

Our attention is also directed to Manley v. Boling, 186 Okla. 59, 96 P. 2d 30, wherein landowners by means of a contract did "grant, bargain, sell and convey to the party of the second part the undivided one-sixteenth (1/16) of all the oil, gas and other minerals in and under the aforesaid lands." The defendants contended that a conveyance of 1/16 of the oil in place was equivalent to a conveyance of ½ of the royalty interest. In disposing of this contention we said:

". . . This argument apparently proceeds upon a misconception of the nature of the interest conveyed, or is based upon the confusion of a mineral interest in lands with an interest in the royalty reserved in an oil and gas mining lease. While it is true that one-half of the ⅛ royalty ordinarily reserved in an oil and gas lease is 1/16, it does not follow that the purchase of 1/16 of the oil and gas in and under land entitles the purchaser to one-half of the royalty reserved in a lease thereon. Ordinarily, where owners of mineral interests join in the execution of an oil and gas lease, granting to the lessee ⅞ of the oil, their interests are proportionately reduced, so that in order to share equally in the royalty reserved, the estates of the respective lessors in the minerals must have been the same. Thus, if a party purchased 1/16 of the minerals, and joined with the owners of the remaining 15/16 in a lease reserving a ⅛ royalty, his share in such royalty would be 1/16 of such ⅛, in the absence of any agreement to share in different proportions. And the result would be the same if at the date of the purchase of the mineral interest the land were subject to an oil and gas lease. The purchaser's interest in the royalty reserved therein would be in the exact proportion that his interest in the minerals bore to the whole mineral estate."

Plaintiffs attempt to distinguish the case of Manley v. Boling, supra, from the case at bar, but we fail to find that the difference in facts in the two cases is so materially different as to make a substantial distinction between the cases. We feel that the cited case is controlling on this particular issue.

We are of the opinion, and hold, that the meaning of the language employed in drafting the deed was free from ambiguity and that the grantors in such deed retained and reserved unto themselves an undivided one-sixteenth of the oil, gas and other minerals under the land conveyed when and as produced. They, owning this one-sixteenth of the minerals, are entitled to one-sixteenth of the one-eighth royalty.

Plaintiffs also complain of alleged error on the part of the trial court in permitting L. D. Oldham to testify to transactions and conversations between W. J. Oldham and C. W. Swearingen.

Plaintiffs' position on this point is based upon 12 O.S. 1941 § 384, which provides:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be al-

lowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case. . . ."

As a witness, L. D. Oldham was permitted to testify that Mr. Swearingen, Mr. Oldham, and he went to the First National Bank in Pawnee, Okla., on or about July 10, 1925, for the purpose of getting someone to draft the deed in question in this action. The services of S. J. Thornton, one of the employees of the bank, were secured to act as scrivener.

Mr. Oldham was permitted to testify over the objection of plaintiffs that Mr. Thornton advised the parties to the transaction to consult a lawyer, which they did by going immediately to see W. S. Caldwell, whose office was upstairs over the back of the bank. The statement with reference to this conversation is the basis of plaintiffs' objection to Oldham's testimony.

Defendants say that the error, if any, in admitting this testimony was harmless. They assert:

". . . Every fact this witness testified to was uncontroverted, uncontested, undisputed except the question whether he was present in the bank. He testified to nothing Mr. Swearingen said, nothing his father said, and no evidence of that kind or character relating to the transaction. . . ."

Under the particular situation presented in this case we entertain the view that the error, if any, in admitting the testimony of Oldham was harmless and that it should be excused upon that basis. Wilcox v. Wilcox, 180 Okla. 228, 68 P. 2d 494.

Mr. Thornton, the scrivener, testified as a witness for plaintiffs to the effect that he was instructed to draft the deed in such a manner as to reserve to the grantor one-half of the oil, gas and other minerals, and that he undertook to select language effective for that purpose.

Mr. W. S. Caldwell testified that he was consulted with reference to the effect of the deed and advised the parties that the grantor was retaining one-sixteenth of the oil, gas and other minerals.

With respect to the conversation relating to the deed, Mr. Caldwell testified he was consulted at his office on or about the 10th day of July, 1925; that, as he states it:

"Mr. L. D. Oldham, Mr. W. J. Oldham and Mr. Swearingen came to my office with this deed. Mr. Oldham asked me to examine it and tell him what I thought about it.. He said that Mr. Thornton advised him to take it to an attorney. I said this: 'Did you people understand'—the Oldhams—'that Mr. Swearingen is retaining one-sixteenth of the oil and gas—yes, sir.' They said they were not buying it for the oil anyway—that they were buying it for a home, and I said, 'There is a lease on there now.' 'Yes,' and 'that gives to the owners one-eighth of the oil and gas.' 'That is right.' I said, 'You understand then, all of you, that if you take this land and pay for it, that Mr. Swearingen, or his heirs, will draw one-sixteenth of the one-eighth of the oil, as provided by the lease'? They said they did, and Mr. Swearingen also said so. I says, 'I don't believe your reservation is good enough, because you don't have, "ingress or egress"—you have not retained any right to go in there to drill a well,' and I asked them if they wanted to change it. Mr. Swearingen and Mr. Oldham said that they didn't—that it was all right. Then I said to them, 'All of you understand that under this reservation that Mr. Oldham has full right to lease this land and draw the bonuses and rentals.' Mr. Swearingen said, 'That is right,' and Mr. Oldham said, 'That is what we understand.' Mr. Oldham then said, 'Well, here is an abstract I wish you would examine and tell us about this title by the time this deed gets back from California.' I told them, 'All right —I will do that,' and I did."

The trial court was deeply impressed by this testimony. In pronouncing judgment it stated:

". . . In other words, it has to appear clearly and convincingly that there was a mistake, or other legal grounds for

changing it. You are asking the court to take a very severe and positive step to change the deed to read from one-sixteenth to one-half, and there must be sound legal grounds for that action, before the court can do anything. As a matter of fact, under the law in this case and under the testimony presented, *especially the testimony of Mr. Caldwell, the attorney,* it is very clear that there is not sufficient evidence in this case to sustain this court in changing the deed." (Emphasis ours.)

Under the evidence presented by the record before us we conclude that the judgment of the trial court is in accord with the clear weight of the evidence and supported by the same.

In the case at bar there was an outstanding oil and gas lease on the land when in 1925 the deed was executed by Swearingen to the Oldhams. That lease expired and thereafter the present lease was executed in the manner as hereinbefore stated. Upon consideration of the holding in the case of Manley v. Boling, supra, and Sykes v. Austin, supra, together with the finding of the trial court in the present case that the evidence was insufficient to support a judgment for reformation, this particular fact becomes immaterial.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

GIBSON, C.J., and OSBORN, BAYLESS, and ARNOLD, JJ., concur. HURST, V.C.J., and RILEY, WELCH, and CORN, JJ., dissent.