GARDNER et al. v. JONES et al.

No. 32542. March 11, 1947.

Rehearing Denied June 17, 1947.

*181 P. 2d 838.*

Harry C. Kirkendall, of Enid, for plaintiffs in error.

Merle G. Smith, of Guthrie, for defendants in error.

RILEY, J. This is an appeal from a decree quieting title and defining the oil, gas, and other mineral interests in and under a quarter section of land in Logan county.

Prior to June 7, 1930, James S. Gardner and Addie Gardner were husband and wife, and owned the land here involved, which was acquired by their joint industry. On June 7, 1930, they entered into a separation agreement under which the wife, Addie Gardner, agreed to take the quarter section of land here involved as her separate property, except that she was to convey to James S. Gardner an undivided "nonparticipating" 1/16th interest in and to all oil, gas, or other minerals in and under and that may be produced from said land. Pursuant to said agreement, James S. Gardner, on June 7, 1930, by general warranty deed, conveyed the land to Addie S. Gardner.

On June 14, 1930, Addie Gardner and James S. Gardner joined in the execution of an instrument denominated "Grant of Oil and Gas Rights". Therein, Addie Gardner was named as grantor and James S. Gardner was named as grantee. This litigation grows out of that instrument, hereinafter set out.

James S. Gardner and Addie Gardner

were divorced. Addie Gardner's interest in the land is now owned by defendants in error, plaintiffs below. A part of James S. Gardner's mineral interest in the land is now owned by Henry S. Johnston and Addie Lee Lowther.

In 1944 a controversy arose as to the interest of James S. Gardner and his grantees. On April 10, 1944, Ralston L. Jones and Irvin Stalder commenced this action to quiet their title and have determined the interest in the land of the respective grantees in the oil, gas, and other mineral interests. After the action was commenced, it was made to appear that on March 13, 1944, James S. Gardner had conveyed to Ina Gardner Biby an undivided 3/20th interest in the James S. Gardner original 1/16th mineral interest, and she was made a party defendant, together with other alleged grantees.

Defendants James S. Gardner, Ina Gardner Biby, Henry S. Johnston, and Addie Lee Lowther answered claiming a net 1/16th of all oil, gas, and other minerals produced or to be produced from the land. Plaintiffs contend that all defendants are entitled to take is 1/16th of the usual ⅛th oil and gas **royalty.**

Pending trial, plaintiff Ralston L. Jones died and the cause as to him was revived in the name of Inez Jones, executrix of his will.

Trial was to the court. The only evidence is the several instruments of conveyance shown by the record. There is no parol testimony. Judgment was entered decreeing plaintiffs to be the owners in fee simple of the land, subject to an outstanding oil and gas lease and subject to an outstanding nonparticipating 1/16th of the ⅛th royalty interest in the land. That interest was described as: *"one-sixteenth (1/16th) of the one-eighth (⅛) royalty,* if oil or gas or other minerals be produced under the present oil and gas lease, and in the event oil or gas or other minerals be produced under a future lease, or leases" defendants

James S. Gardner, Ina Gardner Biby, Henry S. Johnston and Addie Lee Lowther were held to be entitled to a 1/16th interest of the royalty reserved under such future lease or leases, in the event of production thereunder.

The 1/16th of the ⅛th royalty interest was decreed to be owned by defendants in the following proportions:

| | |
|---|---|
| James S. Gardner | 70% |
| Ina Gardner Biby | 15% |
| Addie Lee Lowther | 7½% |
| Henry S. Johnston | 7½% |

Defendants appeal.

The interests of the parties must be determined from the "Grant of Oil and Gas Rights" from Addie Gardner to James S. Gardner. By the granting clause therein, Addie Gardner ". . . conveyed . . . to James S. Gardner, grantee, an undivided 1/16 interest in and to all of the oil, gas, and other mineral in, under, and that may hereafter be produced from the following described land (description)."

The second paragraph excludes grantee's right to participation in leasing the land.

"Said grantor, her heirs and assigns hereby reserve full and exclusive right and authority to lease said land for oil and gas mining purposes on such terms as she, her heirs or assigns may deem fit and the said grantee by accepting this grant does hereby make, constitute and appoint said grantor, her heirs and assigns, his true and lawful attorney, in fact, for him and in his name, place, and stead to make, execute and deliver a lease or leases for oil, gas and other mineral mining purposes covering said above described land, giving to the said grantor, her heirs and assigns, full power to do everything whatsoever requisite and necessary to be done in the premises, hereby ratifying and confirming all that the said grantor, her heirs and assigns shall at any time do or cause to be done by virtue hereof."

The third paragraph provides:

"It is understood and agreed that the

said grantee shall receive an undivided one-sixteenth (1/16) part of any and all oil, gas or other mineral that may be produced under and by virtue of an oil and gas mining lease now held by Sinclair Oil and Gas Company on the above described land or by virtue of any renewal or extension thereof or in the event that said lease should expire before any oil, gas or other mineral is produced thereunder and said grantor, her heirs or assigns should execute another or subsequent oil and gas mining lease on said premises, it is expressly agreed that the said grantee shall have an undivided one-sixteenth (1/16) interest in and to all oil, gas or other mineral produced from said premises under and by virtue of the new lease so executed."

The fourth paragraph provides:

"It is expressly agreed that the grantee is not to receive any part of the money rentals that may be due or hereinafter become due or paid from time to time, to extend the term within which a well or wells may be begun on the above described lands under the terms of said lease now on said premises or any subsequent lease, nor is he to receive any part of the consideration paid for any renewal or extension of said lease or for the executing of a new or subsequent lease on said premises, nor any part of the rents, royalties, or delay money due or paid by reason thereof."

The fifth and concluding paragraph is the usual habendum clause.

Defendants contend that by the plain terms of the grant they are entitled to the net 1/16th part of any oil, gas, or other mineral produced or to be produced from the land, and not 1/16th of the customary ⅛th oil and gas royalty.

Plaintiffs urge that defendants are entitled to only 1/16th of the ⅛th royalty, and in this connection, cite Swearingen et al. v. Oldham et al., 195 Okla. 532, 159 P. 2d 247. The deed under consideration in the instant case is distinguishable in some respects from the deed in the Swearingen Case, supra, particularly in the third paragraph. It plainly provides that the grantee is to receive an undivided 1/16 interest in all the oil and gas or other minerals produced from the premises described, whether produced under the then existing lease or under a new lease.

The general rule of construction of written instruments is:

"A court of equity will look at the real object of a deed and the intention of the parties, and will compel the fulfillment of both, and, if possible, the intention of the grantor will be gathered from the whole instrument. If the intention of the parties to the deed is plain, parol evidence is not admissible to prove an intention different from the terms of the deed, but where a deed possesses an element of uncertainty, parol evidence, the admission of the parties, and other extraneous circumstances may be proved to ascertain its true meaning." Rogers v. Kinney, 122 Okla. 73, 250 P. 890.

It is a cardinal rule of construction that a grant must be construed to effect the plain intent of the grantor, and if that intent is plain, it controls. Ramey v. Stephney, 70 Okla. 87, 173 P. 72; Voss v. Thompson, 105 Okla. 238, 232 P. 392.

Since there was no parol testimony in this case tending to show an intent different from that expressed in the instrument, the intent of the parties must be determined from the whole instrument itself. There can be no doubt but that by the first paragraph of the grant, the grantor conveyed to the grantee an undivided 1/16th of all oil, gas, and other minerals in and under and that may be produced from the land. There can be no doubt but that the grantor reserved to herself, her heirs and assigns, the full and exclusive right and authority to lease the land for oil and gas mining purposes on such terms as she, or her heirs or assigns, might deem fit, and the grantee, in accepting the grant, appointed and designated grantor, her heirs and assigns, his true and lawful attorney in fact for him and in his name and stead, to lease the land for the purposes stated.

The third paragraph of the grant sets forth in clear and unmistakable language just what the grantee was to take and receive under the grant. It is

an undivided 1/16th part of any and all oil, gas, or other minerals that might be produced from the land under and by virtue of a then existing lease held by the Sinclair Oil & Gas Company, or by virtue of any renewal or extension thereof, or in the event that said lease should expire before oil, gas, or other minerals were produced thereunder and said grantee, her heirs or assigns, should execute another or subsequent oil and gas mining lease on the premises, it was expressly agreed that said grantee should have and receive an undivided 1/16th interest in and to all oil, gas, or other minerals produced from said premises under and by virtue of the new lease to be so executed. Words could hardly be plainer. It is true grantee was to have no part of any delay rentals or bonuses for or on account of the original lease or any renewal or extension thereof, or for any new lease or the renewal or extension thereof, but this is not inconsistent with grantee's right to take the net 1/16th of the oil, gas, and other minerals produced from the land.

In view of the plain, unambiguous, and unmistakable terms of the grant here involved, the Swearingen Case does not support the holding of the trial court.

The rights or interests of the grantee and his assigns were not affected by the fact that the land had been sold at administrator's sale. The grantee at such sale took only the interest and estate of the deceased owner.

Under the plain and unambiguous language of the grant, defendants are entitled to receive an undivided 1/16th, and no less, of any and all oil, gas, or other minerals produced or to be produced from said land under any lease executed by any owner.

Reversed, with directions to enter judgment for defendants.

HURST, C.J., DAVISON, V.C.J., and OSBORN, BAYLESS, WELCH, GIBSON, and ARNOLD, JJ., concur. CORN, J., concurs in result.