HINKLE et al. v. GAUNTT et al.

No. 33286.    May 3, 1949.

Rehearing Denied June 7, 1949.

*206 P. 2d 1001.*

Williams & Williams, of Ardmore, for plaintiff in error.

George N. Otey and Champion, Champion & Wallace, all of Ardmore, for defendants in error.

HALLEY, J.  E. C. Gauntt instituted this action on July 19, 1946, to quiet title to an undivided 7/16 interest in the minerals and mineral rights in a tract of 40 acres of land in Carter county, Okla., alleged to have been acquired by him in a deed from John Hinkle, deceased.  It is shown that the

successors in interest of John Hinkle were asserting some interest in the mineral rights so acquired by him, and prayed that his title be quieted and the defendants perpetually barred from asserting any interest therein.

The answering defendants admitted that they claimed an interest in that portion of the minerals and mineral rights claimed by the plaintiff. That when their predecessor, John Hinkle, conveyed the tract of land involved to the plaintiff, it was agreed that John Hinkle should reserve an undivided one-half interest in the mineral rights, subject to an existing oil and gas lease providing for the usual 1/8 royalty. That if the reservation in the deed did not express the reservation of such an interest, its failure to do so was due to an error of the scrivener, and that the deed should be reformed. That the successors of John Hinkle and the plaintiff had so construed the deed by their subsequent action in executing a new oil and gas lease, the bonus for which was equally divided between plaintiff and the successors of John Hinkle, and prayed that title to an undivided 1/2 interest in the minerals and mineral rights be quieted in the defendants.

Plaintiff replied by general denial, and alleged that the cause of action asserted by defendants was barred by both the five and fifteen-year statutes of limitation.

The evidence disclosed that the deed from John Hinkle to E. C. Gauntt was dated November 29, 1919, and conveyed the entire interest in the land described, with the following exception:

"Excepting a one-sixteenth (1/16) interest in the oil and gas deposits that may be developed on said land, and also an undivided one-half (1/2) interest in the bonus or rental of oil and gas lease now existing against said land, and the crop rental for the year 1919."

In 1927, E. C. Gauntt conveyed the land in question to Frank Greenwood, less one-half of the minerals. The surface rights and the one-half of the mineral rights conveyed to Greenwood are not involved in this action.

When John Hinkle conveyed to E. C. Gauntt in 1919, there was outstanding an oil and gas lease dated June 6, 1919, in favor of Otis Coffey, for a term of five years, providing for 1/8 royalty and $200 per year delay rentals. No development was had, but rentals were paid for four years, one-half to Hinkle and one-half to the plaintiff. Plaintiff and the successors of Hinkle leased the land in 1926 to W. J. Cassidy for a bonus of $400. There is a dispute as to how this bonus was divided. Plaintiff states that he received 7/8 thereof and the Hinkle heirs 1/8; but one heir denied that he received such a portion, but did not know what the other successors of John Hinkle received.

The scrivener who prepared the deed from John Hinkle to E. C. Gauntt containing the above-quoted exception testified, on direct examination, that he was told that the grantor was selling the surface rights and 1/2 of the royalty, and that there was an oil and gas lease on the land, and he made the deed showing a reservation of 1/16 of the minerals, when it should have contained 1/2. He testified on cross-examination that he drew the deed as the parties told him to draw it, and that, as written, it represented their agreement. The plaintiff E. C. Gauntt testified that John Hinkle had wanted to retain 1/2 of the mineral rights but that he, Gauntt, wanted it all, and started to call off the negotiations, when Hinkle agreed that he should reserve 1/16 of the mineral rights and should receive 1/2 of the rental to be paid under an existing lease, and also the 1919 crop rent, and that the deal was then closed on these terms.

We consider this evidence far from sufficient to justify a reformation of the deed upon the ground of mutual mistake. No fraud was alleged. See Douglas v. Douglas, 176 Okla. 378, 56 P. 2d 362, and cases therein cited. The evidence as to mistake is neither clear, unequivocal nor decisive.

Plaintiffs in error, defendants below, group their assignments of error under a single proposition, to wit:

"A Deed to Land, Excepting a 1/16th Interest in the Oil and Gas Deposits That May Be Developed On Said Land, and Also an Undivided 1/2 Interest in the Bonus or Rental of Oil and Gas Lease Now Against Said Land, Reserves to the Grantor an Undivided 1/2 Interest in the Oil and Gas Under Said Land."

In view of the language contained in the reservation in the deed above described, we think it well to bear in mind that the words "bonus", "rental", and "royalty" are words of common use in connection with oil and gas leases, conveyances, and reservations, as pointed out by this court in Carroll v. Bowen, 180 Okla. 215, 68 P. 2d 773, wherein the following definitions of these words are set out as follows:

(a) "Bonus" is said to mean "a premium, paid to a grantor or vendor, and strictly as the cash consideration or down payment paid, or agreed to be paid, for the execution of an oil and gas lease."

(b) "The term 'rental', as used in oil and gas leases, refers to the consideration paid to the lessor for the privilege of delaying drilling operations."

(c) "The term 'royalty', in the strict sense, is held to mean a share of the product or proceeds therefrom, reserved to the owner for permitting another to use the property."

It will be noted that the exception, or reservation, contained in the deed under consideration does not mention the word "royalty". It reserves to grantor "a one-sixteenth interest in the oil and gas deposits that may be developed on said land." The further reservation in the deed concerns an entirely different interest, and is described as "an undivided one-half interest in the bonus or rental of oil and gas lease now existing against said land . . . ".

It was shown that an oil and gas lease covering the land was in force at the time of the execution of the deed, and the reservation of the one-half interest clearly refers to the rental due upon the existing oil and gas lease.

The existing lease provided for a yearly rental of $200, and the words "bonus" or "rental" clearly were intended to reserve one-half of that yearly rental to be paid for the privilege of delaying drilling operations. The undisputed testimony showed that this rental was equally divided between the grantor and the grantee in the deed for four years.

This leaves the question of what is meant or was intended in that portion of the reservation which read "excepting one-sixteenth interest in the oil and gas deposits that may be developed on said land . . . . ."

The plaintiff in error relies upon the case of Burns v. Bastien, 174 Oklà. 40, 50 P. 2d 377. In that case is announced the well established rule relative to construction, to the effect that:

" . . . A conveyance must be so construed as to give effect to intention of parties when that intention can be ascertained"

and that as a general rule, all reservations in a deed, unless otherwise expressed, operate in favor of the grantor.

In that case, the court was considering a reservation in the following language:

" . . . reserving an undivided three-fourth interest in and to all of the royalties of oil and gas under and pertaining to said premises, which said reservation of royalty shall belong to George Bastien, Charles Bastien, and E. E. Mead, share and share alike."

It was not shown whether or not there was an existing oil and gas lease at the time that reservation was made, and the court held that such reservation was of the oil and gas rights and was valid and operated to except from the grant the right to such minerals and the right of ingress and egress to

prospect for and take the minerals, although no such specific rights were reserved. It will be noted that the reservation was of "royalties", a term not found in the deed from John Hinkle to E. C. Gauntt.

In the case of Carroll v. Bowen, supra, the language used in the reservation described "an undivided one-half interest in and to the royalty (the ordinary 1/8 ordinarily left to grantor in oil and gas leases being the royalty above referred to) in the above land." This reservation was held to be not ambiguous, and not to include the right to bonus and delay rentals, but that it did reserve a share in the oil, gas, casinghead gas, and any by-products therefrom, since the words in parentheses define the percentage of production included in the term "royalty".

In Manley et al. v. Boling et al., 186 Okla. 59, 96 P. 2d 30, the court had under consideration what was termed a royalty contract, which purported to convey:

" . . . the undivided 1/16 of all the oil, gas, and other minerals in and under the aforesaid lands, and which may be found therein, or produced therefrom, together with the right to go upon said lands and prospect the same for oil, gas and other minerals . . . ."

It appears that the parties to the above contract subsequently executed an oil and gas lease and divided equally between them the royalty collected. The court held that such action on the part of the parties concerned could not be held to increase the interest of the grantees in the contract mentioned, because their interest was shown by plain and unambiguous language, granting only 1/16 of 1/8 royalty.

The case of Melton et ux. v. Sneed et al., 188 Okla. 388, 109 P. 2d 509, was decided by this court in 1940. The deed under consideration conveyed "one-third (1/3) of all royalties from oil, gas or other minerals arising from or out of or produced upon the said above-described lands," and did not refer to any oil and gas lease then existing on the land. The court held that the language was ambiguous, and permitted the introduction of evidence to ascertain the intent of the parties, and held the instrument to be a grant of the minerals, rather than a conveyance of the royalties only.

The most recent case decided by this court is that of Swearingen et al. v. Oldham, 195 Okla. 532, 159 P. 2d 247. The deed under consideration in that case contained a reservation in the following language:

"The grantors reserve to themselves one-sixteenth (1/16) of all oil, gas, or other minerals in or under this land, but convey unto grantee full rights to lease this land for any purpose, and to collect and retain all rentals and bonuses."

This court held that the 1/16 interest meant a 1/16 interest in the 1/8 royalty, where oil was subsequently produced under a lease executed after the date of the deed. In this opinion the court reviewed a number of former decisions, and it is clearly a leading case upon the subject of a proper interpretation of reservations and grants of minerals and mineral interests in this state. The case of Manley v. Boling, supra, was discussed in connection with the contention that a conveyance of 1/16 of the oil interest was equivalent to a conveyance of 1/2 of the royalty interest. In answer to this question, the court quoted from the Boling case as follows:

"While it is true that one-half of the 1/8 royalty ordinarily reserved in an oil and gas lease is 1/16, it does not follow that the purchase of 1/16 of the oil and gas in and under land entitles the purchaser to one-half of the royalty reserved in a lease thereon. Ordinarily, where owners of mineral interests join in the execution of an oil and gas lease, granting to the lessee 7/8 of the oil, their interests are proportionately reduced, so that in order to share equally in the royalty reserved, the estates of the respective lessors in the min-

erals must have been the same. Thus, if a party purchased 1/16 of the minerals, and joined with the owners of the remaining 15/16 in a lease reserving a 1/8 royalty, his share in such royalty would be 1/16 of such 1/8, in the absence of any agreement to share in different proportions. And the result would be the same if at the date of the purchase of the mineral interest the land were subject to an oil and gas lease. The purchaser's interest in the royalty reserved therein would be in the exact proportion that his interest in the minerals bore to the whole mineral estate."

It is well known that in recent years most mineral deeds, sometimes called royalty deeds or conveyances, in describing the interest conveyed or assigned, use the language, after stating the fractional interest to be conveyed:

" . . . of all the oil, gas, and other minerals in and under the above described land, or that may be produced therefrom."

If the interest in all the minerals is described as "one-half (1/2)", then the grantee is entitled to 1/2 of any bonus, rental or royalty that may become thereafter due. If the fractional interest conveyed is "one-sixteenth", then the grantee is entitled to receive one-sixteenth of the proceeds of any future production.

The deed under consideration in the instant case does not use the exact language just mentioned in describing the interest reserved or excepted, but it does use the language, "one-sixteenth interest in the oil and gas deposits that may be developed on said land." We can see no material difference between "one-sixteenth of all of the oil, gas, and other minerals in and under and that may be produced from said land", and "one-sixteenth of the oil and gas deposits that may be developed on said land."

The fact that the reservation of rentals to become due upon an existing oil and gas lease was one-half (1/2) does not mean that the grantor reserved the same rights under future leases, where his rights in subsequent leases were clearly fixed in that regard by the first clause of the reservation as reserving one-sixteenth (1/16) interest "in the oil and gas deposits that may be developed on said land."

The trial court correctly construed the deed involved, and the judgment should be affirmed.

Affirmed.

DAVISON, C.J., ARNOLD, V.C.J., and GIBSON, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur. WELCH, J., concurs in conclusion. CORN, J., dissents.

Rehearing Denied June 7, 1949.