PEASE et al. v. DOLEZAL et al.

No. 35161. July 23, 1952.

*246 P. 2d 757.*

C. E. Barnes, Oklahoma City, for plaintiffs in error.

Henry Dolezal, Perry, for defendants in error.

BINGAMAN, J. On February 26, 1920, three days after he had acquired it, W. L. Pease sold a tract of land in Noble county to A. L. Dolezal for a recited consideration of $10,000. Immediately following the description of the land in the deed it contains the following reservation:

"Said party of the first part (W. L. Pease), his heirs and assigns, hereby reserves 1-16th of all oil and gas produced from above described land and, also reserves the right of ingress and egress from said property for the purpose of drilling for oil and gas."

It is conceded by all parties to this action that the land at the time of this conveyance was not leased for oil and gas purposes. The interest acquired by Dolezal under this conveyance from Pease vested in the plaintiffs in the lower court, defendants in error here. Thereafter, by conveyances made by Pease and by descent and distribution, the interest retained by Pease in the deed vested in the defendants below, plaintiffs in error here.

Oil and gas leases were made on the land by all parties concerned which were transferred to Stanolind Oil & Gas Company, and production was developed. Thereupon, in May, 1949, plaintiffs commenced this action against the defendants, seeking to quiet title to 15-16ths of the oil and gas rights under the land. The defendants contended that the reservation made by Pease reserved an undivided one-sixteenth net to him in all the oil and gas produced from the land, without the right to join in oil and gas leases or receive rentals and bonuses therefrom, and was equivalent to one-half of the one-eighth royalty interest reserved in the oil and gas leases aforesaid. The trial court determined the issues in favor of plaintiffs, holding that the conveyance reserved only a one-sixteenth interest in the oil and gas rights and that plaintiffs were the owners of 15-16ths of the oil and gas rights. Defendants appeal.

In the lower court the parties were in agreement on the proposition that the language of the reservation was plain and unambiguous, and while certain documentary evidence was introduced the case was submitted to the trial court without the introduction of oral evidence, both W. L. Pease and A. L. Dolezal, the grantor and grantee in the original deed, having died prior to the commencement of the action.

In this court defendants first contend that the language of the reservation is plain and unambiguous and reserved to W. L. Pease one-sixteenth net of all the oil and gas produced. In support of this contention they call attention to Armstrong v. McCracken, 204 Okla. 319, 229 P. 2d 590; Hinkle v. Gauntt, 201 Okla. 432, 206 P. 2d 1001; Swearingen v. Oldham, 195 Okla. 532, 159 P. 2d 247, and other cases involving the interpretation of mineral and royalty conveyances and reservations. They particularly rely upon Gardner v. Jones, 198 Okla. 691, 181 P. 2d 838. They further call attention to the fact that in connection with the execution of certain leases by Sadie Dolezal, to whom the property was conveyed by her husband A. L. Dolezal, she entered into written stipulations stating that she was advised that the grantor and two of his grantees, one holding a thirty-second interest and the other a sixty-fourth interest, were claiming a greater portion of the royalty than was reserved in the deed from Pease to Dolezal, and agreed that in the event oil and gas was produced from the lease, the lessee should not be liable for more than one-eighth royalty, and that if it should be determined that W. L. Pease and his grantees, H. A. Pease and Wm. A. Hess, were entitled to a greater portion of the royalty it should be deducted from her portion of the one-eighth royalty specified in the lease.

We have carefully considered this contention and the cases cited by defendants in support of it. In Gardner v. Jones, and in Armstrong v. McCracken, which follows Gardner v. Jones, and in Myers v. Hines, 149 Okla. 232, 300 P. 309, the reservation expressly excluded the owner of the interest conveyed or reserved from the right to lease the land for oil and gas or to participate in the rentals and royalties arising from the leasing thereof. Thus in Gardner v. Jones the interest conveyed to her husband by Addie Gardner was a one-sixteenth interest in all oil, gas or other minerals in and under or that may be produced from said land, and the grantor reserved to herself full and exclusive right to lease the land for oil and gas. The conveyance also provided that the grantee, her husband, should receive an undivided one-sixteenth part of any and all oil, gas or other minerals produced under and by virtue of a lease then held by Sinclair Oil & Gas Company, or any other lease made by the grantor, but that the grantee should not receive any part of the bonus or rentals from any lease executed by his wife. We held in that case that the language of the whole instrument indicated that it was the intention of the parties that by the conveyance by his wife, Gardner was vested with a full one-sixteenth interest in all oil and gas produced, which would be equivalent to one-half of the one-eighth royalty interest.

In Armstrong v. McCracken, the grantor reserved in himself an undivided one-sixteenth interest in all oil and gas produced; gave to the grantee full power to execute and deliver oil and gas leases on the land, and waived any right to participate in bonuses or rentals. We held in that case, following the Gardner case, that Armstrong reserved a net one-sixteenth of all oil and gas produced, which was equivalent to one-half of the one-eighth royalty.

In Hinkle v. Gauntt, the reservation was of a one-sixteenth interest in the oil and gas deposits that might be de-

veloped on the land, and also an undivided one-half interest in the bonus or rental of oil and gas lease then existing on the land. There was no language in the instrument excluding the right of the grantor to make leases or conveyances. In that case we said that there was no material difference between the phrases "one-sixteenth of all the oil, gas and other minerals in and under and that may be produced from said land" and "one-sixteenth of the oil and gas deposits that may be developed from said land" and we affirmed the judgment of the trial court, holding that the one-sixteenth interest reserved in the deed from Hinkle to Gauntt was not equal to one-half of the royalty interest, but that Hinkle was entitled only to one-sixteenth of the one-eighth royalty.

It is apparent from a reading of these decisions that great importance was placed by the court upon the fact that the party reserving or acquiring a fractional interest in the oil and gas was deprived of the right to lease the same or to participate in the bonuses and rentals paid by the lessee. In such case the owner of the fractional interest would not be affected by the fact that under the usual and ordinary oil and gas lease seven-eighths of the oil and gas was conveyed to the lessee, but would be entitled to receive, net to him, the interest reserved or conveyed in the oil and gas produced. He would have no right or interest in the land itself, but only in the oil and gas produced therefrom in the event oil and gas was produced.

Whether a reservation of oil and gas reserves to the grantor, either expressly or by implication, any rights or interest in the land, or in the minerals in place, appears to be the essential difference between a conveyance of a mineral interest in the land and a royalty interest in the oil and gas produced therefrom. This distinction is pointed out in 58 C. J. S., p. 303, §150 (b), in the following language:

"The essential difference between a sale of a royalty interest and a sale of a mineral interest in land leased for minerals is that the purchaser of the royalty interest receives nothing under the lease unless profitable production is obtained, whereas under a mineral sale the purchaser, unless there is a stipulation to the contrary, is entitled to receive his proportionate part of renewal rentals under the lease and like proportion of the price of a subsequent lease or leases on the land and renewals paid thereunder. Whether a mineral interest or a royalty interest is conveyed or reserved depends on the terms of the instrument."

While this statement is supported only by a Louisiana case cited under Note 94, the opinions in that case, and in another Louisiana case which it follows, are well reasoned, and we think correctly state the decisive factor to be used in determining the character of the conveyance. A Texas case so holding is Acklin v. Fuqua (Tex. Civ. App.) 193 S. W. 2d 297. Clearly if the grantor, in a deed reserving a mineral or royalty interest, reserves also the right to go upon the land, drill for and produce oil and gas under his reserved interest, and the right to lease his interest to a lessee who may go upon the land and develop, his interest is in the minerals in and under the land, since otherwise he would have no right to develop and produce them. His royalty interest, if it were in fact a pure royalty interest, would attach only to the oil and gas after it had been produced.

In the instant case the reservation does not exclude the grantor Pease from making leases upon his interest in the land or participating in the bonuses and rentals from leases made, but expressly reserves the right to go upon the land and develop it for oil and gas. That he did not understand or believe that, by said conveyance, he deprived himself of the right to make leases upon his interest in the land is shown by the two conveyances of royalty or mineral interests made by him, one to Henry A. Pease for a

one-thirty-second interest, and one to Wm. A. Hess, for a one-sixty-fourth interest, in the oil and gas. In the conveyance made by Pease to Hess is the following language:

"And it is hereby further expressly declared that it is the true intent and purpose of this conveyance to pass to and vest in the said Wm. A. Hess an undivided 1-64th interest in all mineral and mineral rights in the land first described herein or that at any time may be found therein or thereunder and all grantors rights to operate for said minerals, and deal and contract with regard thereto, including the leasing thereof as fully to all intent and purpose as if the said W. A. Hess was the absolute owner of the entire title and estate in said land."

This provision, identical except for the name and interest conveyed, is contained in the conveyance to Henry A. Pease.

It is also noteworthy that in his conveyance to Dolezal Pease reserved the right to enter upon the lands and develop them for and produce oil and gas. The retention of such rights, that is, the right to enter upon and develop, and the right to lease for oil and gas, are incompatible with the reservation of a pure royalty interest.

In the instant case, as pointed out in Wilson v. Olsen, 167 Okla. 527, 30 P. 2d 710, there was at the time of the conveyance by Pease no oil and gas lease upon the property, and in a strict sense there were no royalty rights to reserve or deal with in any manner.

Defendants lay considerable stress upon the stipulations above referred to executed by Sadie Dolezal to the lessees in leases made by her, but we find in these stipulations no admission on her part that Pease or his grantees were entitled to any specified interest, or that they had no right to lease their interests. They simply say that if he establishes a greater interest, and it is determined that she does not own a full 15-16ths interest in the oil and gas rights, then the royalty

agreed to be paid to her may be decreased accordingly.

In view of the fact that the grantor expressly retained the right of ingress and egress and the right to lease his interest in the land for oil and gas, as evidenced by the language used in his conveyances of interests therein, we conclude that he reserved only an interest in the mineral rights and not a net interest in the royalty. The trial court correctly so held.

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, JOHNSON, and O'-NEAL, JJ., concur.