**L.E. ZEMP, Ernest Zemp, Mary C. Zemp, Lorene Robinson and Don Robinson, Appellees,**

v.

**Marjorie V. JACOBS, Trustee, Cecile E. McMahon, Marjorie V. Jacobs, Myrtle F. Caldwell, and Margaret Lee, Appellants.**

No. 60995.

Court of Appeals of Oklahoma, Division No. 4.

Oct. 15, 1985.

Rehearing Denied Nov. 12, 1985.

Certiorari Denied Jan. 14, 1986.

Released for Publication by Order of Court of Appeals.

Guy Clark, Northcutt, Raley, Clark & Gardner, Ponca City, for appellees.

Max H. Lawrence, Ames, Daugherty, Black, Ashabranner, Rogers & Fowler, Oklahoma City, for appellants.

RAPP, Judge.

The appellees, L.E. Zemp and others,[1] were trial court plaintiffs and are the successors in interest of J. Zemp. The appellants, Marjorie V. Jacobs, Trustee, and others,[2] trial court defendants, are the successors in interest of W.F. Ridge and wife.

Plaintiffs brought suit asserting the mineral reservation retained in the deed granting their mineral estate, claimed by defendants to be a $\frac{1}{16}$ royalty interest in produced oil and gas, was a cloud upon their claim of an $\frac{11}{16}$ mineral interest. An undisputed $\frac{4}{16}$

---

1. The others are: Ernest Zemp, Mary C. Zemp, Lorene Robinson and Don Robinson.

2. The others are: Cecile E. McMahon, Marjorie V. Jacobs, Myrtle F. Caldwell, and Margaret Lee.

mineral interest held by another defendant, Berry Operating Company, is not in dispute and is not involved in this appeal.

This suit results from a 1920 warranty deed given by W.F. Ridge and wife to Joseph Zemp. The Ridges caused the following mineral reservation to be inserted in the deed:

Said first party requires said second party to keep said land under Oil or gas Lease to some responsible and reliable Oil or Gas Company at all times if demand therefor, satisfactory to said first party, at expiration of any Oil or gas lease on said land.

.     .     .     .     .

The Grantors herein specifically reserve and retain an undivided one sixteenth (1/16) of all Oil and Gas produced from said land and also reserve to themselves an undivided One Half of all Oil and Gas rentals and bonuses under any Oil and Gas lease affecting said real estate or in any future Oil and Gas Lease on the above described premises . . . .

An oil and gas lease upon the realty had been given by the Ridges in April 1917 for a five year term. No lease releases were contained in the record. Plaintiffs attempted to establish that no lease existed prior to the execution of the deed by the introduction of a Corporation Commission's Certificate of Non-Development. The certificate contained a legal description different from the land in dispute.

## I

Defendants assert the trial court erred in not granting their motion for summary judgment and in failing to hold the deed's mineral reservation to be a royalty interest.

The trial court indicated that it was persuaded in reaching its decision that the Ridges had retained a mineral interest by the reasoning of *Pease v. Dolezal*, 206 Okl. 696, 246 P.2d 757 (1952) and *Hinkle v. Gauntt*, 201 Okl. 432, 206 P.2d 1001 (1949). *Pease* involved excepting from the conveyance a mineral reservation in realty not then under lease. The exception reserved to the grantors "1/16 of all oil and gas produced" together with the right of access to the property to drill for oil and gas. The Supreme Court affirmed the trial court's judgment holding the reservation to be a mineral interest. *Hinkle* involved excepting a mineral reservation from a realty conveyance which was then under an existing lease. The exception reserved to the grantor "a 1/16 interest in oil and gas deposits that may be developed" together with an "undivided one half (1/2) interest in the bonus or rental of oil and gas lease now existing against said land." The Supreme Court affirmed the trial court's holding that the exception or reservation was a mineral interest.

Additional cases which are of interest here are: *Armstrong v. McCracken*, 204 Okl. 319, 229 P.2d 590 (1951); *Gardner v. Jones*, 198 Okl. 691, 181 P.2d 838 (1947); and *Swearingen v. Oldham*, 195 Okl. 532, 159 P.2d 247 (1945). In *Swearingen*, the grantor reserved a "1/16 of all oil, gas or other minerals in or under this land" and gave grantee full right to lease and receive all rentals and bonuses. The land was then under lease. The Supreme Court held the conveyances' reservation to be "mineral."

In *Gardner* the grantor conveyed to her husband a "1/16 interest in and to all of the oil and gas and other minerals that may be hereafter produced" and reserved to herself all leasing rights and the right to receive all bonuses and rentals. The land was under lease. The conveyance resulted from a divorce action between the grantor and grantee. The Supreme Court, invoking its equitable powers to construe the real intent of the parties in this matter, held the conveyed interest was "royalty." Further, in *Armstrong*, the grantor reserved to himself in the conveyance an "undivided one-sixteenth interest in all oil and gas produced from the land," and waived any right to participate in lease bonuses or rentals. The grantor also gave the grantee full power to execute oil and gas leases. The land was under lease at time of conveyance. The Supreme Court held this to be a royalty interest.

■ The above cases indicate that an exception, mineral reservation or conveyance involving a mineral estate will likely be construed as a "mineral interest" if it contains at least one of the following elements: access to the land for exploration, drilling or producing; right to receive bonuses or rentals under a lease; and, the right to lease the land. Kuntz in his *Treatise On The Law of Oil and Gas*[3] is consistent when he states in Volume I, § 16.2, "Distinguishing Mineral Interest and Royalty Interests" the following:

[T]he types of interests which are created more commonly ... are the full mineral interest, and the non-participating royalty interest ... [A] full mineral interest ... will carry with it all of the incidents of full mineral ownership, including the right to enter and extract oil or gas, the power to confer such right upon another by executing a valid oil and gas lease, the right to receive all payments under any lease, and the right to full ownership upon termination of an existing lease. The owner of the non-participating royalty interest on the other hand, shares only in oil and gas which is produced and saved .... He has none of the other incidents of ownership unless they have been specifically included, as additional interests ....

... Ordinarily, a mineral interest is thought of as being a right to or an interest in oil and gas as they reside in place; whereas the royalty interest is thought of as being a right to or interest in oil or gas after capture.... If the instrument contains the terms which are indicative of an intention to create the full mineral interest and also contains terms which indicate an intention to create a royalty interest, the tendency is to construe the instrument as intending to create a full mineral interest. (Footnotes omitted.)

The Oklahoma Supreme Court in *Jolly v. Wilson*, 478 P.2d 886, 887 (Okla.1970) set forth a summary of factors to be considered in construing a grant or reservation in a mineral estate. These factors distinguish the difference between "mineral" and "royalty" interests. The factors important in the instant case are:

(1) If the interest conveyed or retained is of the oil and gas in and under the land, a mineral interest is indicated. On the other hand, if the interest conveyed is in oil and gas to be produced, a royalty interest *may* be the result. (Emphasis added.)

(2) Who has the right to grant leases and to receive bonuses and rentals? If it is the grantee of the interest, a mineral interest is created. If not a royalty or nonparticipating mineral interest may be the result.

(3) If the right of ingress and egress and of exploration is granted, the interest conveyed is mineral not royalty.

Construction of Ridges' deed and mineral reservation requires examination of the deed to ascertain the maker's intent. No person testified to the Ridges' intent. The Supreme Court in *Gardner*, 181 P.2d at 840–41, stated:

The general rule of construction of written instruments is: "A court of equity will look at the real object of a deed and the intention of the parties, and will compel the fulfillment of both, and, if possible, the intention of the grantor will be gathered from the whole instrument. If the intention of the parties to the deed is plain, parol evidence is not admissible to prove an intention different from the terms of the deed, but where a deed possesses an element of uncertainty, parol evidence, the admission of the parties, and other extraneous circumstances may be proved to ascertain its true meaning." (Citation omitted.)

■ The language of the deed and the language of the reservation make it clear the Ridges were aware of the oil and gas lease then in existence upon the realty and that rentals and bonuses under the lease had been received and additional were expected. This is evidenced by the language

**3.** E. Kuntz, *A Treatise On The Law of Oil and*    *Gas*, § 16.2 at 372–374 (1978).

"and also reserve to themselves an undivided One Half of all Oil and Gas rentals and bonuses under any Oil and Gas lease affecting said real estate or in any *future* Oil and Gas Lease ...." (Emphasis added.) The Ridges thus retained not only one half of all rentals and bonuses which would accrue under the existing lease but in addition thereto, retained a like interest "in any future Oil and Gas lease on the above described premises." The Ridges thus reserved and retained for themselves the right to receive bonuses and rentals from the realty on not only the existing lease but also on all future leases.

The Ridges having entered into the lease in April of 1917 did not at the time of the deed's execution and deliverance convey all executive rights of the mineral estate to Zemp but retained the right to participate in the leasing process. This right of participation is evidenced by the language:

"Said first party requires said second party to keep said land under Oil or gas Lease to some responsible and reliable Oil or Gas Company at all times if demand therefor, satisfactory to said first party, at expiration of any Oil or gas lease on said land."

This language not only gives the right of approval but by withholding approval it also carries with it the right to disapprove. This right of approval when combined with Ridges' right to require Zemp to keep the land under lease placed the Ridges in a key role in the leasing process. These activities retained for the Ridges an executive right or right to grant leases in the mineral estate.

Ridges' hydrocarbon reservation is in the following language: "The Grantors herein specifically reserve and retain an undivided one-sixteenth ($\frac{1}{16}$) of all Oil and Gas produced from said land." This clause does not appear separately but between those clauses setting forth the leasing details and the sharing of bonuses and rentals deriving from the lease. While the hydrocarbon reservation taken by itself may indicate a royalty interest, the reservation must be read in its entirety and not be construed in its separate parts.

The Ridges, having previously entered into a lease for oil and gas production, knew of the royalty available to them and chose not to reserve specifically unto themselves one half of the royalty interest. They chose instead to retain a shared executive interest via the right to participate in the leasing process. They also chose to participate equally in all bonuses and rentals and to keep for themselves one unit of every sixteen units of produced hydrocarbons. Further, while they did not specifically retain the right of access in the reservation, they also did not waive it.

The Ridges' language in the reservation indicates they did not intend to give up any rights. The reservation maximized the Ridges' control to insure receipt of an undivided $\frac{1}{16}$ of *all* oil and gas produced together with income from the lease bonuses and rentals, not only from the existing lease but also for all future leases. The Ridges, being familiar with the leasing process would also have reasonably known that there would be a cost of production to produce any oil and gas and that they would be required to share in this cost pro rata with the retained interest. For as the Supreme Court said in *Swearingen*, 159 P.2d at 249–50 (quoting *Manley v. Boling*, 186 Okl. 59, 96 P.2d 30, 31 (1939)):

"Ordinarily, where owners of mineral interests join in the execution of an oil and gas lease, granting to the lessee $\frac{7}{8}$ of the oil, their interests are proportionately reduced, so that in order to share equally in the royalty reserved, the estates of the respective lessors in the minerals must have been the same. Thus, if a party purchased $\frac{1}{16}$ of the minerals, and joined with the owners of the remaining $\frac{15}{16}$ in a lease reserving a $\frac{1}{8}$ royalty, his share in such royalty would be $\frac{1}{16}$ of such $\frac{1}{8}$, in the absence of any agreement to share in different proportions. And the result would be the same if at the date of the purchase of the mineral interest the land were subject to an oil and gas lease. The purchaser's interest in the royalty re-

served therein would be in the exact proportion that his interest in the minerals bore to the whole mineral estate."

Thus, while the actual hydrocarbon reservation for "oil and gas produced from said land" would tend to indicate that a "royalty" interest was created, this is negated by the Ridges' retention of rights in the critical factors indicative of a mineral interest: the executive right, or the right to grant leases, and the right to receive rentals and bonuses. As stated by Kuntz:[4]

> If the instrument contains the terms which are indicative of an intention to create the full mineral interest and also contains terms which indicate an intention to create a royalty interest, the tendency is to construe the instrument as intending to create a full mineral interest.

Consequently, we hold that the Ridges here created unto themselves as husband and wife a mineral interest and that the mineral interest has the right to receive $\frac{1}{16}$ of the royalty under any lease existing on the realty.

## II

We hold that the Ridges in their mineral reservation by the retention of the right to participate in the leasing process and the right to share equally in bonuses and rentals reserved a mineral interest. The judgment of the trial court is not against the clear weight of the evidence and is affirmed.

BRIGHTMIRE, P.J., and STUBBLEFIELD, J., concur.

---

4. *Id.,* § 16.2 at 374.