No. 15,582.

DUNCAN v. COLORADO INVESTMENT AND REALTY COMPANY.
(178 P. [2d] 428)

Decided February 10, 1947. Rehearing denied March 17, 1947.

Mr. B. F. REED, for plaintiff in error.

Mr. WILLIAM R. KELLY, Mr. E. TYNDALL SNYDER, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court. They are hereinafter referred to as Duncan and the company, respectively.

Duncan brought this action to have his quitclaim deed to the company adjudged a mortgage, the company held to be his tenant, title and income impressed with a trust for his benefit, for an accounting, and for immediate possession and costs. He offered to do equity.

The company in answer pleaded certain statutes of limitation, laches and estoppel, and alleged that the transaction was a straight sale with an option to repur-

chase. The cause was tried to the court. At the close of the evidence the company's motion for a nonsuit was sustained and it had judgment for costs. To review that judgment Duncan prosecutes this writ. His nine specifications are repetitious and argumentative but from them we deduce: 1. The judgment is contrary to the evidence. 2. The undisputed evidence discloses that the equities are with Duncan not, as held, with the company. We think the defense of laches clearly established and all Duncan's equities, if he ever had any, which we doubt, definitely foreclosed thereby.

■ The essential facts are not in dispute. Briefly stated they are: Duncan owned 320 acres of land, with pertinent water rights, in Weld county. December 8, 1916, he borrowed of the company $13,500, giving therefor his note due in ten years at six and one-half per cent semiannual interest, secured by trust deed on said property. January 25, 1922, he was in default for interest and unpaid taxes and for the latter had permitted the tract to go to sale. The company gave notice of intention to foreclose. To avoid publicity and expense and clear the debt Duncan quitclaimed and the parties entered into a separate option to repurchase (hereinafter referred to as Exhibit A) provided it was exercised prior to December 20, 1922. It was never exercised. The company has been in constructive possession since the date of its deed and in actual, open, adverse and notorious possession since February 26, 1924. The property has been assessed to it, maintained and operated by it, leased and released, and it has taken all income, paid all taxes, collected fire insurance for improvements burned, and in all respects exercised every indicia of ownership without claim or gesture of protest, so far as this record discloses, by Duncan or anyone else, until January 28, 1944, when this complaint was filed. There is nothing to indicate that the quitclaim deed could be considered additional security. It gave the company nothing it did not already have and in addition barred it

from any personal judgment for deficiency, if such would otherwise have been its due. The statute of limitations has run against that note. Exhibit A is simply an option to repurchase at the amount the company was shown to have had invested at the date of its exercise, or by simply paying delinquent interest, taxes and costs and so reinstating the note and trust deed. The specific language of the Exhibit is, "Buy back said property * * * Said quitclaim deed * * * shall be an absolute conveyance * * * The Colorado Investment & Realty Company shall have full title," etc. It further recites that in case of Duncan's failure to exercise his option to purchase within the time limited "this agreement shall be null and void." This action is in fact nothing more than an attempt to resurrect and reanimate that long dead option.

Counsel for Duncan stresses our holding in a recent case which he insists is here controlling. *Taylor v. Briggs, Admr.*, 99 Colo. 89, 60 P. (2d) 1081. There Mr. Justice Hilliard, speaking for the court, said: "The character of the transaction is fixed at its inception and is what the intention of the parties makes it"; Hence the applicability of the maxim, "Once a mortgage always a mortgage." As so announced the rule was sound and its applicability unanswerable. But that authority is against Duncan, not for him, since here the transaction, at its inception, was a sale, not a mortgage. Such was the clear intention of the parties and such Duncan treated it for twenty years. The Taylor case, like so many dealing with this rule, dealt with the theory that a mortgage might, by subsequent action or failure to act, be converted into a deed. Here the applicability of Duncan's theory to the facts as we view them would call for a decision that, by action or failure to act, a deed might be converted into a mortgage.

Assuming, however, some vestige of security in the original transaction, Duncan's right to rely thereon has been lost by his laches. We have no inclination now to

attempt a treatise on that equitable defense. It has a long and interesting history which the curious may read in any law encyclopedia. Among its chief functions are to protect parties from musty claims exhumed from a long forgotten past whose documents may have been lost or destroyed and whose witnesses may have died, claims which no reasonable man, relying thereon, would so permit to sleep, hence presumably bogus or waived; and to protect courts from being cluttered with futile and speculative litigation. Every step in the development of the law of this defense and every exception definitely written into it by the courts has been prompted and is supported by considerations of simple justice. We may, with propriety, however, note some of its fundamentals particularly applicable to the case before us.

Equity will grant no relief in the face of unreasonable delay. The strongest equity may be abandoned by acquiescence. *Great Western M. Co. v. Woodmas of Alston M. Co.,* 14 Colo. 90, 23 Pac. 908.

Knowledge of existing conditions and such long acquiescence therein as justifies implied waiver will support the defense of laches. 21 C. J., p. 210, §211.

When one with full knowledge permits another for a long period to incur expense and deal with property as his own, the defense of laches will be upheld, even where fraud in the original transaction is alleged. *Woodruff v. Williams,* 35 Colo. 28, 85 Pac. 90.

What is reasonable time within which to assert rights depends upon "the circumstances of each particular case * * * The time in which the courts have treated demands as stale varies from four to twenty years." *Sears v. Hicklin,* 13 Colo. 143, 154, 21 Pac. 1022.

In the decades which have passed since that declaration we have found no case raising that maximum and are loath to do so now with no better excuse for the delay than here appears.

The defense is particularly applicable in cases of notable increase, or probable increase, in value, where the former owner has evaded all risk and responsibility until time has brought to fruition the faith of his adversary. *Great Western M. Co. v. Woodmas of Alston M. Co., Supra.* That rule has some application here. We know from the record that in December, 1922, this property would not support a loan of $13,500, whereas when this complaint was filed Duncan asserted it was "of the reasonable value of $30,000 or more."

According to many authorities not only lack of knowledge of essential facts, but ignorance of rights as well, have been held ample excuse for otherwise unreasonable delay. Here the record discloses full knowledge of facts, and from other sources—of which we take judicial notice—we learn that there could be no ignorance of rights. Duncan has for a time antedating the transaction in question been a member of this bar and in active practice, hence conclusively chargeable with full knowledge of his legal rights.

The conclusion is inevitable that if this original transaction was a sale and option to repurchase, Duncan retained no rights after December 20, 1922; if it had any characteristics of a mortgage, all his equities have long since been lost by laches.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE ALTER concur.