**SURETY ROYALTY COMPANY, a corporation, Plaintiff in Error,**

v.

**Neal A. SULLIVAN, S. J. Buffington, and the Kanotex Refining Company, a corporation, Defendants in Error.**

No. 35943.

Supreme Court of Oklahoma.

Oct. 12, 1954.

M. C. Kratz, Stillwater, for plaintiff in error.

Stevens & Grantham, Ponca City, Neal A. Sullivan, Newkirk, for defendants in error.

DAVISON, Justice.

This is a suit of equitable cognizance wherein Surety Royalty Company, as plaintiff, seeks to quiet title to mineral interests in some 113 acres of land in Kay County, Oklahoma, against S. J. Buffington, as defendant. The parties will be referred to as they appeared in the trial court.

Defendant's grantor, Neal A. Sullivan, was originally a party defendant, but he filed a disclaimer and has no interest in the litigation. The other defendant, Kanotex Refining Company, claimed no interest in the realty, but was purchasing the oil runs therefrom. The only question for determination here is that of the respective titles, to the minerals, of the plaintiff and defendant, first above named. Defendant owns all the title except for that owned by the plaintiff, having acquired the same through mesne conveyances from a mortgage foreclosure purchaser and by quit claim deed from plaintiff's immediate grantor. Plaintiff's title and the extent of the interest it owns, is dependent upon the interpretation of two instruments of conveyance in the chain of title.

In 1917, having theretofore leased said lands for oil and gas purposes, the then owners conveyed to one McMullin:

"An One Sixteenth undivided interest in and to all the Oil and Gas and Oil and Gas Rights in or under the following described lands situated in

Kay County, State of Oklahoma, to-wit:

" 'The Northwest (NW¼) of Section Fifteen (15), Township Twenty-seven (27) North, Range One (1) West I.M. and that part of the Northeast (NE¼) of Section Fifteen (15), Township Twenty-seven (27) North, Range One (1) West, I.M. lying west of the right-of-way of the At., T. & S. F. Railway Co. right-of-way, except eighty (80) acres off the south (S) side of said tract. Containing 113 acres more or less and being situate in Kay County, Oklahoma.'

"Together with second party, its agents and assigns at all times to enter upon, explore for oil and gas, operate, develope, store and transfer the same, subject however to any rights now exhisting to lessee or its sucessors and assigns under any valid oil or gas lease heretofore executed by the then owners of the fee of said lands and now of record in the office of the County Clerk of said County, provided, however, its is understood and agreed that second party is hereby granted the right to, and shall be entitled to have and receive like interest in and to all bonuses, rents and royalties, and other benefits which may accrue under such leases from and after their date hereof, and that in the event of the expiration or termination of any such lease or leases, and its is deemed expedient to lease the said described lands for oil and gas mining purposes, the second party shall be a necessary party to the leasing of said lands and be entitled to have and receive such rights and benefits as shall then or thereafter accrue upon said lease, as fully in all respects, and to the same extent as though the said second party were owners in fee of said land to the extent of the interest in the oil and gas and oil and gas rights herein granted."

McMullin assigned to Kay Royalty Company who, in turn, reassigned, one-half thereof back to the original owners, and one-half to one Dalton, plaintiff's immediate grantor. Defendant's immediate grantor became, through execution sale, the owner of the entire fee except for the interest owned by Dalton. Dalton then conveyed to plaintiff by the following instrument:

"Whereas, Sadie C. Skelton, Edgar H. Skelton and Katherine H. Skelton, as owners of the property hereinafter described, did on the 3rd day of November, 1917, execute a royalty conveyance to C. H. McMullin, their royalty conveyance conveying to the said C. H. McMullin an undivided one-sixteenth interest in and to all the oil and gas and oil and gas rights in or under the following described lands situated in Kay County, State of Oklahoma, to-wit:

"The Northwest Quarter of Section Fifteen (15), Township Twenty-seven (27) North, Range One (1), West of the Indian Meridian, and that part of the Northeast Quarter of Section Fifteen (15), Township Twenty-seven (27) North, Range One (1) West of the Indian Meridian, lying west of the right-of-way of the A., T. & S. F. Railway Co. right-of-way, except eighty (80) acres off the south side of said tract, containing 113 acres, more or less; and

"Whereas, the said C. H. McMullin did on the 12th day of November, 1917, for good and valuable consideration, sell, assign, transfer, set over and convey unto the Kay Royalty Company, a corporation, all the above described interest which he received from the said Sadie C. Skelton, Edgar H. Skelton and Katherine H. Skelton, said royalty conveyance and assignment being filed for record in the office of County Clerk of Kay County, Oklahoma, on the 4th day of February, 1918, and recorded in Book 31 of Miscellaneous Records, page 393; and

"Whereas, the Kay Royalty Company, the corporation above named, did on the 15th day of July, A.D. 1918, for a good and valuable consideration sell, assign, transfer, set over and convey unto W. S. Dalton all the above described rights which it had received

from the said C. H. McMullin, the said C. H. McMullin having received his interest from Sadie C. Skelton, Edgar H. Skelton and Catherine H. Skelton, the said royalty conveyance and assignment to W. S. Dalton being filed for record in the office of County Clerk of Kay County, Oklahoma, on the ——— day of December, A.D. 1918, and recorded in Book 35 A of Miscellaneous Records, Page 75.

"Now Therefore, In consideration of the sum of Six Thousand Dollars($6,-000.00) in hand paid, receipt of which is hereby acknowledged, the said W. S. Dalton, the present owner of said royalty interest, does hereby bargain, sell transfer, assign and convey unto the Surety Royalty Company, a corporation of Blackwell, Oklahoma, its successors and assigns, an undivided one thirty-second in and to all the oil and gas and oil and gas rights in or under said property described as follows, to-wit:

"Northwest Quarter of Section Fifteen (15), Township Twenty-seven (27) North, Range One West, Indian Meridian, Kay County, Oklahoma, lying west of the right-of-way of the A. T. & S. F. Railway Company right-of-way except eighty acres off the south side of said tract.

"And for the same consideration, the undersigned W. S. Dalton, for himself, his heirs, executors, administrators and assigns, does covenant to the said Surety Royalty Company, its successors and assigns, that he is the lawful owner of said one thirty-second royalty interest and that he has good right and authority to sell and convey the same."

Subsequently, and in 1950, Dalton was approached by defendant's grantor for a quitclaim deed to the property. After taking it up with plaintiff, he did execute and deliver the quitclaim deed to defendant's grantor, including the following paragraph therein, at the suggestion of plaintiff, to-wit:

"It is distinctly understood that this conveyance does not include that interest in the above-described property which I have heretofore conveyed to the Surety Royalty Company of Blackwell, Oklahoma."

Defendant's grantor then conveyed to defendant. This conveyance was executed a few months after plaintiff had executed an oil and gas lease on the premises. On July 24, 1951, plaintiff filed this suit which culminated in judgment for defendant and plaintiff has perfected this appeal.

Concisely stated, the question for determination here is—"What is the fractional mineral interest owned by plaintiff and in what acreage is it owned?" The first part of the question is answered by an interpretation of the original conveyance to McMullin. The latter part is answered by an interpretation of the conveyance from Dalton to plaintiff. We will discuss these conveyances in that order.

Plaintiff contends that it owns and is entitled to receive a net $\frac{1}{32}$ of the oil produced or $\frac{1}{4}$ of the $\frac{1}{8}$ royalty. The trial court held that plaintiff owned $\frac{1}{32}$ of the oil before recovery and therefore was entitled to receive net $\frac{1}{32}$ of the $\frac{1}{8}$ royalty. With this conclusion we agree. At the trial, except for copies of the conveyances, almost all of the testimony offered was oral and had for its purpose the establishment of the intent of the parties in executing the conveyances. The trial court properly ruled that the written instruments were not ambiguous and that parol testimony was not admissible to vary their terms. The rule with reference to when such parol evidence is not admissible is well established. A number of earlier cases dealing with its application were cited in the case of Mecks v. Harmon, 207 Okl. 459, 250 P.2d 203, 207, wherein it was quoted, as follows:

"Where a written contract is complete in itself and, viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended, and the intention of the parties cannot be determined from

the surrounding circumstances, but must be gathered solely from the words used."

In the case of Swearingen v. Oldham, 195 Okl. 532, 159 P.2d 247, language, much the same as that used in the McMullin conveyance herein, was held to be free from ambiguity. That conclusion was primarily founded upon the opinion in the earlier case of Manley v. Boling, 186 Okl. 59, 96 P.2d 30, wherein the court said:

"It is only when a deed possesses an element of uncertainty that parol evidence, the admissions of the parties, and other extraneous circumstances may be proved to ascertain its true meaning."

When analyzing the language used, to determine the intent of the parties to the instrument, certain guide posts of interpretation are helpful in reaching a correct solution. In cases such as that now before us, they consist, in the main, of the differences and distinctions between conveyances of "mineral" interests and conveyances of "royalty" interests. A discussion of them is contained in the opinion in the case of Pease v. Dolezal, 206 Okl. 696, 246 P.2d 757, 761. The following quotation, from 58 C.J.S., Mines and Minerals, § 150, p. 303, was therein adopted and approved:

"The essential difference between a sale of a royalty interest and a sale of a mineral interest in land leased for minerals is that the purchaser of the royalty interest receives nothing under the lease unless profitable production is obtained, whereas under a mineral sale the purchaser, unless there is a stipulation to the contrary, is entitled to receive his proportionate part of renewal rentals under the lease and like proportion of the price of a subsequent lease or leases on the land and renewals paid thereunder. Whether a mineral interest or a royalty interest is conveyed or reserved depends on the terms of the instrument."

In the words of the court, it was then pointed out,

"It is also noteworthy in his conveyance to Dolezal Pease reserved the

right to enter upon the lands and develop them for and produce oil and gas. The retention of such rights, that is the right to enter upon and develop, and the right to lease for oil and gas, are incompatible with the reservation of a pure royalty interest."

That explanation in the cited case rests upon the fact that an interest in royalty is an interest in the proceeds derived from the minerals which a lessee has located, developed and produced, while an interest in the minerals is an interest in those natural resources before recovery, necessitating their location, development and production before being reduced to actual possession. In the latter situation, therefore, the "rights thereto" or "Oil and Gas Rights" are essential to make the conveyance effective. When the conveyance is of royalty it is of something after the "rights thereto" have been exercised and by using those words in the conveyance they "must either be construed as a mere repetition or as referring to gas, oil and mineral rights." Wilson v. Olsen, 167 Okl. 527, 30 P.2d 710, 713. Their use in that manner makes the instrument "ambiguous to the point that it requires additional information from which to determine with absolute certainty its exact meaning." That uncertainty or ambiguity does not arise from their use when the conveyance is of minerals or mineral interests, for in that case, without a conveyance of the "rights thereto" the grantee "would have no right to develop and produce them." Pease v. Dolezal, supra.

In the case at bar, the McMullin conveyance is not of royalty, but, rather, of an "interest in and to the Oil and Gas and Oil and Gas Rights", and of the right to share in all future "bonuses, rents and royalties, and other benefits which may accrue." No ambiguity exists. Those words are in harmony with, and earmark the conveyance as one of an interest in the minerals before recovery. They are inconsistent and in discord with a conveyance of purely a royalty interest. The conclusion reached is the same as that in the Manley v. Boling case, supra, that "The purchaser's interest

in the royalty reserved therein [oil and gas lease] would be in exact proportion that his interest in the minerals bore to the whole mineral estate." Therefore, McMullin became the owner of ⅒ of the minerals before recovery and one-half of that or ½₂ was conveyed to, and is owned by plaintiff. Being the owner of ½₂ of the minerals, it owns ½₂ of the royalty from the oil produced.

The next question is as to the acreage in which plaintiff owns that ½₂ interest. This is determined by the effect to be given to the conveyance from Dalton to plaintiff. No case is cited by either party nor do we, upon independent investigation, find one where the same contention was made as is here being made by plaintiff. The conveyance, hereinabove quoted, after reciting a partial history of grantors' title to the mineral interest in the 113 acre tract, definitely and unambiguously conveys the mineral interest in only 80 acres. There is nothing to indicate that Dalton intended to convey more. Although with a somewhat different factual situation, in the case of Shaw v. Bisbee, 83 Me. 400, 22 A. 361, 362, the court pointed out that:

"* * * reference in deeds to the registry of prior deeds, unless expressly appearing otherwise, is only intended to help identify the premises conveyed, and not to determine the quality or quantity of the title; otherwise it would be hazardous to accept deeds containing such references. Grantees would be too easily deceived by them. * * *"

In the instant case, the reference to former conveyances with the specific descriptions therein was clearly for the purpose of showing the source of the title. The granting clause definitely described the property conveyed (80 acres). Any other conclusion would make it impossible to convey a part of a tract of land if reference was made, in the conveyance, to the instrument by which title was acquired to the entire tract. Therefore, the conveyance from Dalton to the plaintiff conveyed his title to the mineral estate in the eighty acres—not in the entire 113 acres. The re-

mainder was conveyed to defendant by the subsequent quit claim deed. The quoted paragraph which was added to the deed did not alter the situation.

Motion to dismiss appeal was filed by the defendant, but our conclusion on the merits makes it unnecessary to determine the questions in the motion.

The judgment is affirmed.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD, WILLIAMS and BLACKBIRD, JJ., concur.