No. 17,674.

MARGARET M. SIMSON, EXECUTRIX, ETC. *v.*
ERNEST F. LANGHOLF, ET AL.
(293 P. [2d] 302)

Decided February 6, 1956.

Mr. Donald S. Stubbs, Mr. G. Michael Morris, Messrs. Lewis, Grant & Davis, for plaintiff in error.

Mr. Alden T. Hill, Mr. Ralph H. Coyte, for defendants in error.

*En Banc.*

Mr. Justice Lindsley delivered the opinion of the Court.

Throughout this opinion we shall refer to the parties as they were designated in the court below. Margaret M. Simson as executrix has been substituted as plaintiff in error for William M. Simson now deceased, plaintiff below, who brought this action in June, 1954, to quiet title in him in fee simple to 49% of all the oil and gas underlying the following described real property:
E½SW¼, SE¼NW¼, SE¼, S½NE¼, Section 8, and the E½NE ¼, Section 17, all in Township 9 North, Range 79 West of the 6th Principal Meridian, situated in the County of Jackson, State of Colorado.

Defendants Ernest F. Langholf and Parke Dean Langholf in their answer and cross-complaint allege they are owners in fee simple of the real estate described, with the exception of an overriding royalty of 49% of a landowner's one-eighth royalty or 6.125% of such royalty; that the agreement (hereafter referred to) should be reformed to reflect this 6.125% royalty as plaintiff's interest, and the title to the balance of the realty quieted in defendants.

The Federal Land Bank of Wichita, Kansas, made no appearance and its default was properly entered.

Both parties base their contentions upon the meaning and legal effect of the following written instrument:

### "AGREEMENT

"THIS AGREEMENT made and entered into between W. A. Simson of Walden, in the County of Jackson,

State of Colorado, and John M. Simson, of Walden, in the County of Jackson, State of Colorado:

WITNESSETH:

That for and in the consideration of one per cent (1%) of all oil and/or gas produce saved and marketed from those certain lands covered by oil and gas prospecting permit, serial number ........................., (United States Land Office, at Denver, Colorado, John M. Simson has hereby assigned and set over to W. A. Simson forty nine per cent (49%) of all oil and/or gas that may be produced saved and marketed, from his lands in Jackson County Colorado, known and described as follows, to-wit:
East half of the south-west quarter, Southeast quarter of North-west quarter, South-east quarter, South half North-east quarter, Section 8, and the east half of North-east quarter, of section seventeen, all in Township Nine, North of Range Seventy-nine, west of the sixth Principal Meridian.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals this 3rd. day of January, A. D. 1927.

(Signed) W. A. Simson  (SEAL)
(Signed) John Simson   (SEAL)

STATE OF COLORADO ) SS.
COUNTY OF JACKSON )

I, C. E. Mitchell, County Clerk and Recorder in and for the state and county aforesaid, do hereby certify that W. A. Simson, and John M. Simson, parties to the above agreement, appeared before me this day in person and acknowledged that they signed, sealed and delivered this said agreement as their free and voluntary act and deed, for the uses and purposes therein set forth.
IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 3. day of Jan A. D. 1927.

(SEAL)                     (Signed) C. E. Mitchell (SEAL)
                                  County Clerk & Recorder."

The trial court found the instrument to be ambiguous and permitted the introduction of extrinsic evidence to show the intent and meaning of the parties and concluded that the defendants were entitled to the real property involved in fee simple, subject to the encumbrance in favor of the Federal Land Bank of Wichita, Kansas, and subject to the right of the plaintiff, his heirs and assigns, to 49% of any royalty payment the defendants received by virtue of any oil and gas lease executed on the property described, and further that plaintiff and had no right, title or interest in the fee of the property, and no control in the leasing of the same or any bonus or delayed rental payments. "That had the parties intended to convey an interest in realty or an actual mineral interest in the land a deed form could have and probably would have been used."

The only evidence before the court pertaining to the intention of the parties to the agreement was that given by the parties themselves. Briefly it disclosed that the property was not subject to an oil and gas lease at the time of the execution of the agreement; that neither of the Simsons singly or together attempted to negotiate an oil lease during all the years to the date of the institution of this suit; that the wording of the agreement, drafted by the county clerk and recorder C. E. Mitchell who acknowledged its execution, was in accord with the instructions and the understanding of the parties; that the agreement was recorded October 1, 1945; that subsequent thereto John Simson conveyed the property to the defendants by a warranty deed which made no exception of the mineral interest previously conveyed to W. A. Simson; later John M. Simson paid defendants $1200.00 for a release of his breach of warranty of clear title resulting from his conveyance to defendants without excepting such mineral interest.

John M. Simson testified that the plaintiff paid at least $400.00 in addition to the consideration recited in the agreement; namely, the 1% interest in a certain U. S.

Government lease. Upon motion of defendants the testimony of this additional consideration was stricken by the court.

John M. Simson further testified that he intended to convey just what the instrument said—49% of the oil and gas; that if plaintiff had attempted to drill he would have assented and in fact "patted him on the back"; that he did not know what a bonus was; that he thought he had the right to enter into an oil and gas lease but that he would have consulted with William A. Simson; that he had 51% of any royalties and W. A. Simson 49%, but that he didn't understand the difference between royalty and ownership; and that to him they meant the same thing.

Plaintiff testified that John M. Simson sold him 49% of the oil and gas on the property.

Plaintiff assigns as error:

1. The court's finding that if there was to be a conveyance of an interest in realty or mineral interest, a deed form could have and would have been used.

2. That the court erred in striking the testimony of the entire consideration for the agreement.

3. That the court erred in construing the instrument to be a conveyance of a 49% of any royalty that John M. Simson might receive on any future oil and gas lease he might enter into, and that it was error to hold that plaintiff had no interest in any bonus or delay rentals that might be received through future such oil and gas leases, and that it was error to hold that the plaintiff had no control over the entering into any future oil and gas leases.

As to the first ground of error the conclusion of the court that if the intention of the parties was to effect a conveyance of an actual mineral interest a deed form could and probably would have been used, there is not an iota of evidence in the record to support this conclusion and it was error to so hold.

As to the second assignment of error, if the deed were

ambiguous and extrinsic evidence was admissible to show the intention of the parties and the actual agreement, then evidence of the entire consideration paid for the conveyance should have been admitted and the plaintiff not restricted to that portion of the consideration recited in the agreement, the court erred in striking this testimony.

We come now to consider the third assignment of error, this being the assignment giving us the most concern. Plaintiff contends that he is the owner of the oil and gas in fee simple, while the court found that he was entitled only to 49% of whatever royalty the defendants might receive, and that defendants were in exclusive control of any future oil and gas lease on the land, any royalty that might be reserved or any bonus or delay rentals, this even though the defendants in their pleadings concede that the plaintiff is entitled to 49% of a one-eighth "overriding royalty 6.125%."

The evidence discloses no fraud, misrepresentation or mutual mistake. Instead each of the witness signatory to the contract states that it was drafted for their signatures in accordance with their understanding of their deal. This being the situation, what then is the agreement? Within its four corners is it plain and unambiguous? Or is it ambiguous and therefor necessary to take extrinsic evidence to arrive at the understanding and intention of the parties?

■ We are of opinion that the trial court erred both in its findings of fact and conclusions of law and that the instrument involved had the legal effect of, and is, a conveyance in fee simple from John M. Simson to the plaintiff of 49% of all oil and gas in situ, or in place, under the described realty; that the plaintiff is entitled to all the rights that flow from such title in fee simple, and that an estate in realty was created in the grantee.

That oil and gas and other minerals may be severed from the realty and a separate estate created therein is

recognized in this jurisdiction. *Mitchell v. Espinosa,* 125 Colo. 267, 243 P. (2d) 412.

The wording of the instrument was legally sufficient to convey an estate in fee simple, there being no words of limitation in the conveyance to indicate otherwise. C.R.S. '53, 118-1-7,51.

The "assignment and set over," as expressed by the parties, to the plaintiff of 49% of the oil and gas that may be produced, saved or marketed from the described lands was, we think, a conveyance of these minerals in perpetuity, in situ, in fee simple. The rule applicable here is of considerable antiquity as indicated by the following quotation found in 90 A.L.R. 770, at p. 772:

"According to the feudal law, the whole beneficial interest in land consisted in the right to take the rents and profits thereof, and accordingly the general rule has always been, in the language of Coke, that 'if a man seised of land in fee by his deed granteth to another the profits of those lands, to have and to hold to him and his heirs, and maketh livery secundum formam chartae, the whole land itself doth pass. For what is the land but the profits thereof?' 1 Co. Litt. 45."

A case often cited, because of its exhaustive treatment of the subject matter, is *Sheffield v. Hogg,* and *Federal Royalty Co. v. State,* (consolidated cases) 124 Texas 290; 77 S. W. 2d 1021. In this case it is held that a reservation of a fractional interest in "royalties" in a determinable fee; i.e., under a lease for a term of years, which may become perpetual, reserves that interest in fee simple and such interest is one in real estate. The court in its opinion at page 1028 quotes from 1 Thompson on Real Property, §246, p. 320; §247, p. 321; §248, p. 322, to the effect that a conveyance of unaccrued rents consists of incorporeal hereditaments and, until separation, are part of the land. Thus if a grantor conveys a fee simple title in the land, reserving rent, he himself has a fee simple estate in the rent, and no particular words of reservation need to be used, provided the words

show an intent to make such a reservation in perpetuity. On the same page the opinion quotes from Tiffany on Real Property (2d. Ed.) §407, p. 1474; §407, p. 1471; and §407, p. 1470, calling attention to the fact that this authority is in accord with Thompson stating that a rent reservation upon the grant of a fee simple estate in land creates an interest in the real property.

Although confusion often exists in the minds of laymen and inexperienced conveyancers in the words to be used in creating a royalty interest or a mineral interest, the two estates are in fact separate and distinct and have well defined legal attributes. *Palmer v. Crews,* 203 Miss. 806, 35 So. 2d 430; 4 A.L.R. 2d483.

■ The ordinary meaning of the word "royalty" as applied to an existing oil and gas lease is the compensation provided in the lease for the privilege of drilling for and producing oil and gas and consists of a share of the oil and gas produced or the profits therefrom, but it does not include a perpetual interest in the realty. *Bellport v. Harrison,* 123 (Kan.) 310, 255 Pac. 52. An assignment of "all the oil and gas" in certain lands is, however, a very different matter.

In *Surety Royalty Company v. Sullivan,* (Okla. 1954) 275 P. (2d) 259, the court in considering the distinction said: "an interest in royalty is an interest in the proceeds derived from the minerals which a lessee has located, developed and produced, while an interest in the minerals is an interest in those natural resources before recovery, necessitating their location, development and production before being reduced to actual possession."

■ Where the conveyance or reservation, as the case may be, consists of an interest in perpetuity to all the oil and gas minerals that may be extracted, the conveyance or reservation is a grant or reservation of the minerals in fee simple with the attributes and rights that go with such ownership, including the right to enter upon the land for exploration of oil, participation in delay rents, bonuses and leasing.

*Toothman v. Courtney,* 62 W. Va. 167; 58 S.E. 915. *Paxton v. Benedum-Trees Oil Co.,* 80 W. Va. 187; 94 S.E. 472. *McIntosh v. Vail,* 126 W. Va. 395; 28 S.E. 2d 607; 151 A.L.R. 804. *Lockhart v. United Fuel & Gas Co.,* 105 W. Va. 69; 141 S.E. 521. *Weakland v. Cunningham,* 3 Sad. (Pa.) 519; 7 Atl. 148. *Mandle v. Gharing,* 256 Pa. St. 121; 100 Atl. 535. *Beam v. Dugan,* 132 Cal. App. 546; 23 P. (2d) 58. *Callahan v. Martin,* 3 Cal. 2d 110; 43 P. (2d) 788. *McNeese v. Renner,* 197 Miss. 203; 21 So. 2d 7. *McCall v. Nettles,* 251 Ala. 349; 37 So. 2d 635. *Hinkle v. Gauntt,* 201 Okla. 432; 206 P. (2d) 1001. *Vandenbark v. Busick,* 126 F. 2d 893. *Miller v. Ridgley,* 2 Ill. 2d 223; 117 N.E. 2d 759. *Arrington v. United Royalty,* 188 Ark. 270; 65 S.W. 2d 36. *Hanson v. Ware,* (Ark.) 274 S.W. 2d 339. *Serena v. Rubin,* 146 Kan. 603; 72 P. (2d) 995. *Broderick v. Stevenson Consolidated Oil Co.,* 88 Mont. 34; 290 Pac. 244.

See also annotations in 101 A.L.R. 884; 122 A.L.R. 959; 4 A.L.R. (2d) 492.

In Oklahoma and California the doctrine of ownership in fee simple of minerals in place is not recognized. In Oklahoma, however, under a reservation or grant in perpetuity, royalty rights in their broader sense are reserved, and have the usual incidents of fee simple ownership and constitute an interest in the realty, including the right of entry for exploitation for oil and gas, participation in delay rents, bonuses and leasings. *Melton v. Sneed,* 188 Okla. 388; 109 P. (2d) 509.

In California the grant or reservation is described as being similar to a profit *a prendre* and is an interest in real estate with similar rights and attributes. *Callahan v. Martin,* supra. *Dabney-Johnston Oil Corp. v. Walden,* 4 Cal. (2d) 637; 52 P. (2d) 237.

A review of the authorities indicates that under the evidence in this record, there being no oil or gas lease in existence at the time of the conveyance or reservation, the words of the grant or reservation "assigned and set over" are such as to convey a partial interest in the

minerals in perpetuity, and an estate in fee simple is thus created. Such estate is an interest in the real property and includes the right of entry upon the land for exploitation of the minerals, delay rentals, bonuses and participation in the leases. *Melton v. Sneed, supra,* and cases therein cited. See also *Burns v. Bastien,* 174 Okla. 40; 50 P. (2d) 377. *Pease v. Dolezal,* 206 Okla. 696; 246 P. (2d) 757. *Meeks v. Harmon,* 207 Okla. 459; 250 P. (2d) 203. *Elliott v. Berry,* 206 Okla. 594; 245 P. (2d) 726. *Dennett v. Meredith,* 168 Kan. 58; 211 P. (2d) 117. *Marias River Syndicate v. Big West Oil Co.,* 98 Mont. 254; 38 P. (2d) 599. See also A.L.R. citations supra.

In *Melton v. Sneed,* supra, the court admitted extrinsic evidence to show that prior to the litigation the parties themselves, by their actions and conduct, had construed their rights and settled their respective ownership.

Having concluded the conveyance here involved to be a conveyance of the minerals in place in fee simple, it follows that the trial court erred in its conclusion that the grantee had no right to participate in delay rentals, bonus or future oil and gas leases. In cases of this type where the written instrument is clear and unambiguous the ordinary provision prohibiting extrinsic evidence applies. However, the admission of evidence by the trial court as to the existance or non-existance of a lease at the time of the execution of the instrument is admissible and in this case was proper for the purpose of determining the intention of the parties, and was in harmony with the authorities herein set forth.

The judgment is reversed and the cause remanded with instructions to the trial court to enter a decree holding that the plaintiff herein is the owner in fee simple of 49% of the oil and gas in place in the lands described in the pleadings.