BARRY MOGUL, Plaintiff-Appellant, *v.* KENNETH TUCKER, Defendant-Appellee.

First District (5th Division)    No. 80-1239

Opinion filed November 30, 1981.—Rehearing denied January 11, 1982.

Feiwell, Galper & Lasky, Ltd., of Chicago (Bernard L. Rivkin, of counsel), for appellant.

Friedman & Koven, of Chicago (Paul Homer and Lawrence M. Templer, of counsel), for appellee.

JUSTICE WILSON delivered the opinion of the court:

Plaintiff filed a complaint for an accounting and for specific performance of an agreement under which he claims a 25% interest in a shopping center project. The trial court granted defendant's motion to dismiss the action as being barred by laches. The sole issue raised on appeal is whether the laches defense was properly applied under the circumstances of this case. We reverse and remand.

The facts, contained in the complaint and parties' affidavits, are undisputed and may be stated briefly. On October 15, 1974, plaintiff, defendant, Roy Gottlieb, and Alan Inbinder, as general partners, entered into a limited partnership agreement forming Kenroy Ventures, Ltd. One purpose of the partnership was to acquire real estate for investment and development. Concurrent with this agreement, the general partners executed a second agreement which provided a method by which the individuals could participate in the investment opportunities tendered to any one of them. In pertinent part, this agreement provided as follows:

"1. Without affecting any obligation imposed on a party hereto by reason of any other agreement or by operation of law, should an opportunity for investment in a real estate transaction be tendered to one of the parties hereto ('Offeror'), such opportunity shall be made available to the other parties hereto unless the Offeror elects to make such opportunity available to Kenroy Ventures, Ltd., or Kenroy, Inc., ('Kenroy'); providing, if the Partnership or KENROY rejects the opportunity, the Offeror shall then tender the same to

the other parties hereto, and providing further, if the Offeror is MOGUL, only 70% of the opportunity need be tendered in accordance with the provisions hereof. All tenders shall be made within a reasonable time, depending upon the circumstances then involved.

2. Should a party hereto desire to take advantage of the tender, he shall be entitled to do so on the same basis as he participates in the Partnership, that is, an interest of 30% to Gottlieb, 30% to TUCKER, 30% to Inbinder and 10% to MOGUL. If one or more parties hereto decline the opportunity, the interest shall be reallocated among participants in the ratio which the interest of each bears to the aggregate interests of participants."

In early March 1977, defendant obtained the opportunity to acquire vacant land in Glenview, Illinois, for development as a shopping center. He offered participation in the venture to Kenroy Ventures, Ltd., Kenroy, Inc., Gottlieb, and Inbinder, all of whom declined the opportunity. By the terms of paragraph 2 of the agreement, therefore, plaintiff became entitled to acquire a 25% interest in the investment opportunity. The offer was never tendered to plaintiff, however, and plaintiff first learned of the matter on March 18, 1977. Plaintiff made repeated attempts to assert his participation right, but was rebuffed by defendant. On May 29, 1979, 26 months after learning of the investment opportunity, plaintiff filed his complaint.

Defendant moved the trial court to dismiss the action on the grounds of laches and certain other defenses which are no longer at issue in this case. In support of his motion, defendant filed his affidavit, which stated that the shopping center, known as Plaza Del Prado, was begun on March 1, 1977, when he and 23 others formed a limited partnership. Defendant was in charge of arranging and overseeing the financing, construction, and operation of the project. As a general partner defendant was responsible for over $6,000,000. In addition, he personally guaranteed more than $7,000,000. Defendant further stated in his affidavit that he saw plaintiff daily during the 2-year period and that plaintiff had expressed his intention to file suit to enforce his rights as early as the summer of 1977. Defendant told him to do so if he desired.

In opposition to defendant's motion and memorandum, plaintiff filed his own affidavit and response. In the affidavit, plaintiff stated that he had initially demanded participation in the venture approximately March 18, 1977, when he first learned of defendant's actions. Further, on April 8, 1977, and April 26, 1977, plaintiff had sent defendant memoranda in which he repeated his request to be allowed to participate in the investment. In response to the April 8 memorandum, defendant had written,

"I've gone through this with you more than once—and refuse to

be harassed on any ongoing basis—This may have been handled poorly but I consider a majority agreement between the major stockholders sufficient to allow me to proceed in the fashion I feel is right * * *."

Plaintiff further averred that after making repeated attempts to resolve the controversy and obtain his participation interest, he resigned from Kenroy, Inc., in 1979 and shortly thereafter filed suit. The reason plaintiff gave for not suing earlier was that he feared reprisals from his employer, Kenroy, Inc., whose principal operating officers and major shareholders were defendant and Gottlieb. Further, he had hoped to obtain an amicable resolution of the controversy through his discussions with the other general partners.

Following a hearing on defendant's motion to dismiss the action, the trial court agreed that laches should be imposed as a bar to plantiff's action. In response to plaintiff's counsel's argument that defendant was not prejudiced by the delay, the court reasoned:

"You now have a * * * completed development that is completely in operation now and is ongoing, as compared against twenty-six months ago you had a[n] embryonic situation. That is such a change I think it requires this relief."

The trial court also denied plaintiff's subsequent motion for reconsideration.

OPINION

■■ The defense of laches is "not a mere matter of time but principally a question of the inequity of permitting the claim to be enforced * * *." (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552, 147 N.E.2d 341, 344.) What facts combine to constitute laches is determined in light of the particular circumstances of each case, but the following factors have been approved by the Illinois Supreme Court: (1) defendant's conduct that gives rise to plaintiff's claim; (2) plaintiff's delay in asserting his or her rights; (3) defendant's lack of knowledge or notice that plaintiff would assert the claim or right; (4) injury or prejudice to defendant if the claim is held not to be barred. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344. Accord, *Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill. 2d 325, 291 N.E.2d 641.) For certain types of claims, such as those involving oil and mineral rights, "more than ordinary promptness" is required because of their "speculative or fluctuating character." *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344 (laches would apply to bar plaintiff's suit to quiet title against purchaser of tax deed where purchaser had no notice of plaintiff's claim, was not guilty of any deception, and had paid taxes for 20 consecutive years under color of title).

In the pending case, defendant and the trial court focused almost exclusively on the fourth element set out in *Pyle v. Ferrell*—whether

plaintiff's delay in filing suit so prejudiced defendant that it would be inequitable to allow the action to proceed. In so doing, we believe, they overlooked two other major considerations: defendant's initial alleged breach of contract and the repeated notices that plaintiff intended to assert his rights. Defendant admits he was aware from the beginning of plaintiff's desire to obtain his share of the investment opportunity pursuant to paragraph 2 of the October 15, 1974, agreement. Apparently, defendant believes that by adamantly refusing to honor the agreement and then telling plaintiff to go ahead and sue him he somehow relieves himself of further responsibility in the matter, at least under the circumstance that the venture had become a highly profitable enterprise at the time the suit was filed. For support, defendant relies on cases from other jurisdictions, which purportedly adopt a "doctrine of speculative delay." Pursuant to this concept, an action should be barred where the subject of the claim is speculative and subject to rapid fluctuations in value and the claimant delays asserting his interest until the risk has passed. We believe that this "doctrine" is nothing more than the recognition in *Pyle v. Ferrell* that "more than ordinary promptness" may be required in prosecuting certain types of claims. Thus, the reasonableness of the claimant's delay in asserting a claim in a particular case may partly depend on the nature of the interest being sought. None of the cases defendant relied upon, however, are factually analogous to the pending case. For example, in *Duncan v. Colorado Investment & Realty Co.* (1947), 116 Colo. 12, 178 P.2d 428, a lawyer conveyed a quit-claim deed, as payment of his debt, to his creditor realty company in 1922, yet waited until 1944 to file suit. The basis of his action was to have his quit-claim deed (which contained an 11-month repurchase option) adjudged a mortgage so that the title and income from the land could be impressed with a trust for his benefit. The court noted that the creditor had remained in constructive possession since the 1922 conveyance of title. In addition, the creditor had been in open and notorious possession of the land for at least 20 years following the expiration of plaintiff's repurchase option, which he never exercised. In the 22-year period that the realty company had possessed the land and paid all taxes and other expenses, the land had increased in value. In holding the plaintiff's action to be barred, the court wryly stated, "We think the defense of laches clearly established and all [plaintiff's] equities, if he ever had any, which we doubt, definitely foreclosed thereby." 116 Colo. 12, 14, 178 P.2d 428, 429.

Defendant's other cited authorities similarly involve facts that reflect a claimant's long, unexplained or unreasonable delay in asserting rights coupled with prejudice to the adverse party. (See *Farrar v. Hood* (1952), 56 N.M. 724, 249 P.2d 759 (in suit to quiet title to mineral estate, claim for rescission of conveyance was barred by laches after a delay of more than

24 years, great increase in value of the rights, and the transfer of interest to third parties who purchased them for value); *Landell v. Northern Pacific Ry. Co.* (D.D.C. 1954), 122 F. Supp. 253, *aff'd* (D.C. Cir. 1955), 223 F.2d 316 (minority stockholders' action against a railroad alleging the illegality of its reorganization in 1896 was barred by the lapse of more than 50 years and the substantial changes and monetary expenditures incurred by defendant in time).) Other authorities cited by defendant recognize that the mere increase in value of property does not alone convert delay into laches (*Fitzgerald v. O'Connell* (R.I. 1978), 386 A.2d 1384, 1388), although it is one circumstance that may be considered. (*Lawson v. Haynes* (10th Cir. 1948), 170 F.2d 741, 744.) More recently, an Illinois decision noted that in some circumstances, a marked appreciation in the value of the property might constitute sufficient injury or prejudice to justify laches. (*Schroeder v. Schlueter* (1980), 85 Ill. App. 3d 574, 407 N.E.2d 204.) In *Schroeder*, the plaintiff waited 10 years before instituting an action for specific performance of an option contract for sale of certain land. The plaintiff's option to purchase had expired in 1969, and the defendants had given notice that they considered his interest terminated. In the next decade, defendants significantly improved the land, increasing its value from $70,000 to $500,000. When the plaintiff filed suit in 1978, without any previous notice to defendant of his alleged interest, the court held his action barred by laches.

■■ The facts of the pending case are completely dissimilar. Unlike the claimant in *Schroeder*, plaintiff here gave early and repeated notice of his intention to participate in the investment opportunity. Consequently, it is difficult to see how defendant was prejudiced by the filing of this action within two years of its accrual. It is true that defendant undertook considerable financial risk and that the venture has greatly increased in value by the success of the shopping center. Nevertheless, defendant chose to proceed in the face of plaintiff's clear statement of intent to acquire his proportionate interest. Defendant's assumption of the venture's risk was voluntary, as was his decision to deny plaintiff a portion of the opportunity. Therefore, we find lacking that element of delay that prejudices or misleads a defendant, or causes him to pursue a course different from that which he would have otherwise taken. (*DeBruyn v. Elrod* (1981), 84 Ill. 2d 128, 136, 418 N.E.2d 413, 417.) It does not appear that defendant changed his position in *reliance* on plaintiff's inaction. On the contrary, defendant simply ignored plaintiff's attempts to assert his rights and proceeded with the shopping center development. Moreover, we find that plaintiff's explanation for not filing suit earlier is reasonable under the circumstances. We conclude that defendant failed to establish either that plaintiff's delay was unreasonable or that he was prejudiced by the delay. Therefore, we reverse the trial court's judgment that the action

is barred by laches and remand the cause for reinstatement so the parties may proceed to the merits.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.