**KELLER CATTLE CO., a Kansas corporation, Plaintiff–Appellant,**

v.

**Stephen R. ALLISON, a/k/a S.R. Allison, Defendant–Appellee.**

No. 00CA1118.

Colorado Court of Appeals, Div. I.

Aug. 1, 2002.

Phillip D. Barber, P.C., Phillip D. Barber, Denver, Colorado, for Plaintiff–Appellant.

Pendleton, Friedberg, Wilson & Hennessey, P.C., Alan C. Friedberg, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge METZGER.

In this action concerning a nonparticipating royalty interest in oil and gas, plaintiff, Keller Cattle Co., appeals the summary judgment entered in favor of defendant, Stephen R. Allison. We affirm in part, reverse in part, and remand the case for further proceedings.

On May 3, 1972, Allison and his wife (since deceased), as sellers, and Keller's predecessors, as buyers, entered into a specific performance contract for the purchase and sale of a 6,200–acre ranch in Yuma County. The contract provided:

Sellers reserve 1/2 of royalties now owned by sellers. Also reserve 1/2 of royalties reverting back to ranch in 1973. Such reservations will expire 7–1–97.

On May 30, the parties met again and executed an "Amendment to Contract," which set out who would keep certain abstracts of title and described the allocation of certain rentals under an existing oil and gas lease. After Keller's predecessors had left the meeting, Allison and his attorney prepared and executed the warranty deed. The royalty reservation stated:

As to any oil, gas or other mineral rights, whether metallic or nonmetallic, now owned by the Sellers, including reservations, in, on, or under the above-described property, said Sellers expressly except[s] and reserve[s] an undivided 1/2 of the 1/8 royalty interest in and to all 8/8 of such oil, gas and other minerals now owned by said Sellers, in, on and under and that may be produced and saved from the lands hereinabove described, to be delivered to the credit of said Sellers herein, free and clear of all costs into pipe line or other receptacles into which said oil, gas or other minerals are delivered. Provided, however, that in the event the royalty interest provided for in any future leases shall be greater or less than 1/8, said Sellers shall own and hold and be entitled to receive an undivided 1/2 of said royalty interest and of any production bonuses, overriding royalties and other payment out of production that may be provided for the benefit of the holder of the exclusive leasing privilege. This conveyance includes all water and water rights of the Grantors.

In 1993, Keller requested that Allison execute a document verifying that his royalty reservations would expire on July 1, 1997. Allison refused to do so.

Keller then filed this action in 1999 for a declaratory judgment that the language of the contract controlled over the language of the deed, for reformation of the deed, and for damages for breach of contract and unjust enrichment. In the alternative, Keller asked the trial court to interpret the royalty provision in the deed as a perpetual, nonparticipating royalty interest, which either was void

under Colorado law or which served to create a fee mineral interest in the property of 6.25%.

Allison moved for summary judgment, arguing that the doctrines of merger and laches precluded entry of judgment for Keller on the declaratory judgment and unjust enrichment claims. Keller's response presented legal argument and evidence in opposition. Allison replied to the response, raising for the first time a statute of limitations defense to the breach of contract claim and supplying an affidavit from a previously undesignated expert. Keller moved to strike the affidavit, but the trial court entered summary judgment for Allison four days later without ruling on Keller's motion or giving Keller an opportunity to respond to the new argument raised in Allison's reply. The court held:

> The Court agrees with [Allison] that, even if there is a factual dispute with reference to the question of whether the parties' intention as stated in their contract of purchase and sale was represented correctly in the parties' deed, the doctrine of laches and the statutes of limitation bar this action. As to the declaratory judgment claim, the Court agrees with [Allison] that, as a matter of law, nonparticipating royalty interests were valid at the time of the contract and deed involved in this case.

## I.

Keller contends the trial court erred in granting summary judgment in favor of Allison on the basis that the doctrine of laches barred its equitable claims. We agree.

Summary judgment is a drastic remedy, appropriate only if the pleadings and supporting documents demonstrate both that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the burden of establishing that no genuine issue of material fact exists, and any doubts in this regard must be resolved against it. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). All doubts concerning the existence of a triable factual issue must be resolved against the moving party, and the nonmoving party has the benefit of all favorable inferences that could be

drawn from the facts. *Van Alstyne v. Housing Authority*, 985 P.2d 97 (Colo.App.1999). Our review of a summary judgment is de novo. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987).

The doctrine of laches permits a court to deny a party equitable relief. *Manor Vail Condominium Ass'n v. Town of Vail*, 199 Colo. 62, 604 P.2d 1168 (1980). The elements of laches are: (1) full knowledge of the facts; (2) unconscionable or unreasonable delay in the assertion of an available remedy; and (3) intervening reliance by and prejudice to another. *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1 (Colo.1996). Whether the elements of laches have been established is a question of fact. *Montezuma County Department of Social Services v. Laner*, 937 P.2d 903 (Colo.App.1997). A party asserting laches as a basis for summary judgment must establish that no genuine issue of material fact remains, that the other party unreasonably delayed the proceedings, and that such delay caused substantial prejudice. *See Cullen v. Phillips*, 30 P.3d 828 (Colo.App. 2001).

Here, as the trial court noted, genuine issues remain concerning the parties' intent. There is a real question whether Keller had "full knowledge" of the facts and their effect. For example, while Keller's predecessors received a copy of the deed in 1972 shortly after Allison had signed it, they also had a copy of the specific performance contract, which limited Allison's right to royalties to a twenty-five-year period. Because laches is not applicable to a party who has no duty to act, *cf. City of Thornton v. Bijou Irrigation Co., supra*, Keller asserts that nothing was required to be done for twenty-five years until the royalty limitation in the contract came due and that Allison has not shown that Keller had "full knowledge" of the significance of the factual discrepancy between the deed and the contract. These considerations militate against the entry of summary judgment.

Additionally, we note that the deed does not contain a merger clause and that it was executed by Allison alone shortly after he

and Keller's predecessors had signed the "Amendment to Contract" and they had left.

Allison stated he did not agree to a limitation on the duration of the royalty interest and that, when he discovered the twenty-five-year term in the contract, he obtained Keller's predecessors' agreement to remove it. Keller denied any such agreement and pointed to Allison's contradictory statement that he unilaterally instructed "his lawyer" (who was representing both parties) to delete the limitation in drafting the deed. The lawyer did so, but did not inform Keller's predecessors.

Additionally, the purpose and significance of the 1981 Stipulation of Interest, arguably concerning only an unrelated five percent royalty interest on the property in the 1930s, are hotly disputed.

Consequently, because several genuine issues of material fact remain concerning the first element of laches—full knowledge of the facts and their significance—the entry of summary judgment is precluded.

Similarly, the issues surrounding the second element of laches—whether any delay by Keller's predecessors was unconscionable or unreasonable—remain in dispute.

■■■ The length of time elapsed alone is not sufficient to establish laches. *Warren v. Adams,* 19 Colo. 515, 36 P. 604 (1894). What is or is not an unreasonable delay is a question of fact, *Falls v. Lahmer,* 157 Colo. 521, 404 P.2d 542 (1965), that is dependent upon the circumstances of each case. *Duncan v. Colorado Investment & Realty Co.,* 116 Colo. 12, 178 P.2d 428 (1947).

As we have noted, the parties do not agree when Keller's predecessors become aware of the discrepancy between the contract and the deed. Allison argues that this awareness occurred in 1972, shortly after Keller's predecessors received the recorded deed. Keller denies this assertion and, relying on the rule announced in *Hooper v. Capitol Life Insurance Co.,* 92 Colo. 376, 20 P.2d 1011 (1933), maintains that its predecessors were entitled to presume that the deed was consistent with the contract. Keller also points to *Falls v. Lahmer, supra,* which held that a twelve-year delay in bringing suit on a dis-crepancy between a contract and a deed did not constitute laches.

Given these polar litigation positions and the numerous factual disputes surrounding them, the trial court's determinations that a delay existed and that that delay was unconscionable cannot stand.

For similar reasons, we conclude that it is questionable at best whether Allison has demonstrated the third element of laches—intervening reliance by and prejudice to another. While it is true that some witnesses have died and others have only dim recollections of the events in 1972, other witnesses, including Allison himself, are still available or have made statements about the intent of the parties at the time of the transaction.

■ Additionally, laches "is not available to one whose position is not changed by virtue of delinquencies on the part of the opposing party." *Seaton–Hayden Mines Co. v. Renshaw,* 101 Colo. 342, 345, 73 P.2d 999, 1000 (1937). We note that Allison has received his fifty percent royalties for the twenty-five years from 1972–1997 and evidently is still receiving them.

Consequently, because several genuine issues of material fact remain and because all doubts as to the existence of a triable factual issue must be resolved against Allison, the entry of summary judgment was error.

## II.

■ Keller next contends the trial court erred in granting summary judgment on its breach of contract claim on the basis of the statute of limitations. Again, we agree.

■■ Statutes of limitation are enacted to promote justice, discourage unnecessary delay, and forestall prosecution of stale claims. *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094 (Colo.1996). Whether the statute of limitations bars a particular claim is usually a question of fact. *See Bad Boys of Cripple Creek Mining Co. v. City of Cripple Creek,* 996 P.2d 792 (Colo.App.2000).

Allison raised the statute of limitations argument for the first time in his reply to Keller's response to his summary judgment

motion. The trial court entered judgment only four days later, and Keller had no opportunity to respond to the reply. Because the argument was untimely raised and Keller was not given an opportunity to counter it, to the extent the summary judgment was granted on that basis, it must be reversed. *See Union Insurance Co. v. Kjeldgaard*, 775 P.2d 55 (Colo.App.1988).

### III.

Because the issue may arise on remand in the event it is determined that the reservation in the deed controls, we must determine the nature of the interest in the deed and whether its creation here was legally permissible. Keller argues the trial court erred in ruling, as a matter of law, that nonparticipating royalty interests were valid in 1972 when the contract and deed were signed. We find no error.

■ A nonparticipating royalty is an expense-free interest in oil or gas, if, as, and when produced. The owner of the royalty interest does not share in bonus or rental, nor in the right to execute leases or to explore and develop. This royalty interest is in contrast to a mineral interest, which is the property interest created in oil and gas after a severance by mineral deed or by oil and gas lease. The duration of a mineral interest is like that of common law estates, namely, in fee simple, in fee simple determinable, for life, or for a fixed term of years. The prime characteristic of a mineral interest is the right to enter the land to explore, drill, produce, and otherwise carry on mining activities. 1B Krendl, *Colorado Methods of Practice* § 9.2 (1997).

■ Keller relies on *Simson v. Langholf*, 133 Colo. 208, 293 P.2d 302 (1956), and *Corlett v. Cox*, 138 Colo. 325, 333 P.2d 619 (1958), which can be read to hold, as a rule of property law and not as a matter of construction, that when a person holds the right to the profits or a share of the profits that a mineral fee estate might yield, that person owns a portion of the mineral fee estate itself. However, these decisions seem to rely on a rule described as one of "considerable antiquity":

Under the feudal law, the whole beneficial interest in land consisted in the right to take the rents and profits thereof, and accordingly the general rule has always been, in the language of Coke, that "if a man seised of land in fee by his deed granteth to another the profits of those lands, to have and to hold to him and his heirs, and maketh livery secundum formam chartae, the whole land itself doth pass. For what is the land but the profits thereof?"

W.W. Allen, Annotation, *What Constitutes Oil or Gas "Royalty"*, 4 A.L.R.2d 492, 495 n. 9 (1949).

In virtually all jurisdictions, the current view is that the legal principle enunciated by Lord Coke is merely a rule of construction, which will not control or override an intention to the contrary expressed in the language of the document under consideration. *See* Richard W. Hemingway, *The Law of Oil and Gas* § 2 (3d ed.1991); *see also Davis v. Hardman*, 148 W.Va. 82, 133 S.E.2d 77 (1963).

In any event, we conclude *Simson* and *Corlett* are distinguishable from the circumstances here. In both those cases, no mineral leases existed on the properties at the time of the relevant conveyances. Here, in contrast, the property had at least one outstanding mineral lease when the 1972 deed was executed.

■ Further, the most basic rule of construction dictates that the intent of the parties is the paramount factor to be determined in any agreement. The conveyance here clearly entailed a transfer of approximately 6200 acres of land and also contemplated Allison's reservation of nonparticipating royalties in existing oil and gas leases. The contract provided that the royalty reservations would expire on July 1, 1997, but the deed contained no such time limitation. Thus, the discrepancy concerned only the duration of Allison's royalty interest, not the nature of his interest.

In contrast, in *Simson v. Langholf, supra*, the parties intended that a fee interest be transferred. The opinion noted the grantor's testimony that "he didn't understand the dif-

ference between royalty and ownership; and that to him they meant the same thing," and the grantee's testimony that the grantor "sold him 49% of the oil and gas on the property." *Simson v. Langholf, supra,* 133 Colo. at 212, 293 P.2d at 305.

In *Corlett v. Cox, supra,* 138 Colo. at 331, 333 P.2d at 622, the court emphasized that the reservation of the oil and gas was explicitly "a part payment of said land." No such explicit quid pro quo appears in either the contract or the deed here.

Consequently, Keller's reliance on such uncertain and distinguishable authority is misplaced.

Moreover, we note that the decision in *Mull Drilling Co. v. Medallion Petroleum, Inc.,* 809 P.2d 1124 (Colo.App.1991), expressly recognizes that in Colorado the owner of a mineral interest has a right to convey the executive right to lease such an interest. Although the precise question here, namely, whether a nonparticipating royalty interest existed in Colorado before 1991, was not raised in *Mull Drilling,* the opinion of logical necessity assumed that it was permissible to split the mineral fee estate.

We are also unpersuaded by Keller's argument that the General Assembly's 1991 passage of § 38–30–107.5, C.R.S.2001, evidenced a change in the law. That statute expressly permits the creation of a nonparticipating royalty interest. *See* F. Erisman & D.G. Ebner, *Grant or Reservation of Royalty Interests in Colorado: Senate Bill 91–34,* 20 Colo. Law. 1193 (June 1991). While we recognize that enactment of a statute may evidence a change in the law, such is not always the case.

The pertinent legislative history indicates that a wholesale change in the law pertaining to oil and gas royalties was not contemplated by the General Assembly. In testimony before the House Committee on Agriculture, Livestock, and Natural Resources, David Ebner, then chairman of the Mineral Law Section of the Colorado Bar Association, introduced his discussion of the bill later enacted as § 38–30–107.5 by saying:

This legislation actually was drafted by members of this section to resolve a problem that has troubled us for quite some time—very simply as we all know it is possible for different people to own the surface and the minerals in a piece of property. One question is, if you do own minerals and not the surface of the property is it also possible to further separate the ownership so that one party can own a right to proceeds of production, a royalty, but not have right to lease the property or otherwise cause it to be developed. In every state in the union, that answer is yes, except possibly in Colorado where some confusing case law makes it impossible for a lawyer to tell a client definitively—yes, it may be done here. So in order to provide landowners greater flexibility for dealing with their property we are suggesting that the laws specifically recognize that such an interest is possible which will make the law in Colorado uniform with the law in the other 49 states.

Hearings on S.B. 34 before the House Committee on Agriculture, Livestock, and Natural Resources, 58th General Assembly, First Session (Feb. 27, 1991). These statements reflect an intent only to clarify disagreements about the state of the law in Colorado, not to change it.

The questionable applicability of *Simson v. Langholf, supra,* and *Corlett v. Cox, supra,* to the facts here, and the legislative history of § 38–30–107.5, cause us to hold that the interest described in the deed is a nonparticipating royalty interest in oil and gas and that it was legally permissible to create such an interest in 1972.

### IV.

In light of its entry of summary judgment for Allison, the trial court did not rule whether the doctrine of merger barred Keller's claims or whether the deed must be reformed to conform to the terms of the contract. Because we have reversed the summary judgment, the trial court should revisit those issues on remand.

The judgment is affirmed to the extent it determined that creation of a nonparticipating royalty interest was legally permissible. The judgment is reversed in all other re-

spects, and the case is remanded for further proceedings.

Judge DAVIDSON and Judge ROY concur.