## WILCOX et al. v. WILCOX et al.

No. 26984. April 27, 1937.

Rehearing Denied May 18, 1937.

Application for Leave to File Second Petition for Rehearing Denied June 8, 1937.

Arnote & Arnote, for plaintiffs in error.

Wm. Jones, Jr., and Guy L. Andrews, for defendants in error.

CORN, J. This is an action to establish a trust involving the ownership of certain shares of stock in a public utility corporation. The action was brought in the court below by Otis O. Wilcox against O. O. Dollings, administrator of the estate of Elizabeth Wilcox, deceased, and her heirs, naming them, and the Public Service Company of Oklahoma. The cause was tried to the court and judgment was for the plaintiff, from which the defendants, administrator and heirs, appeal.

The record discloses that the plaintiff, Otis O. Wilcox, was a son of the deceased, and that he had lived with his widowed mother about 18 years prior to her death. That the deceased formerly lived in the state of Indiana, but in the year 1920 sold her property there and came with her said son to Oklahoma, locating at Hartshorne, where a sister and other relatives of hers resided. She purchased a small home at that place, where she and her said son made their home together until her death in 1934. Plaintiff was a carpenter and laborer and used his earnings for household expenses as well as his own personal expenses. The two lived in common, each contributing to household and living expenses. The other four children of deceased, three daughters and one son, who are defendants in this case, lived in Indiana. In 1929 deceased withdrew her funds from the bank, and fearing the alternative of keeping same, amounting to about $6,000. secreted in her home, decided to make distribution of it among her children. She was then old and infirm and desired the satisfaction of dividing her property among her children while she lived and as she saw fit and proper. At that time one of the daughters from Indiana was visiting her and she told her said daughter of her desire to divide her property among her children. She proposed to give the four children in Indiana $1,000 each, and to have the visiting daughter take it to them on her return home. Said daughter wrote home to ascertain if that would be agreeable with the others, and they all consented to accept the gift and to entrust her to deliver same. The son in Indiana owed $700 on a note given as part purchase price of a farm which she had sold him. He was given the note and $300 in cash as his share. She deeded the home at Hartshorne to her son Otis, the plaintiff,

and retained $600 in government bonds as a burial fund. There remained $2,200 in cash which the plaintiff claims she gave him, whom she looked to for care and support the rest of her life. This money went into the stock in controversy.

The evidence shows that plaintiff took the $2,200 to the office of the Public Service Company at Hartshorne and made application for that amount in stock; that he had been solicited to purchase the stock by Harold Trueblood, a cousin of plaintiff, who was an employee of the company and who received commissions on stock sales; that plaintiff asked the company to issue the dividend checks to his mother in order that she might receive and cash the checks, but was advised that that could not be done unless the stock was issued in her name. Then plaintiff and Mr. Trueblood took the application for the stock to have her sign it with plaintiff. She protested against having it issued in her name, stating that the money belonged to Otis, the plaintiff, but when the reason for having it issued in her name was explained to her, she consented to having it so issued, and signed the application. This was the testimony of Harold Trueblood. He stated that he sold the stock to plaintiff and received the money therefor from plaintiff.

Mrs. Nancy Jane Winslow, sister of deceased, testified that deceased told her that she had given her property to her children; $1,000 each to the children in Indiana and all the rest to Otis. It seems that she talked quite freely with relatives and friends about the disposition she had made of her property, several of whom were called as witnesses and testified in substance that she told them that she had given her children in Indiana $1,000 each and had given all the rest to Otis.

The contention of the administrator and of the defendant heirs was that the $2,200 in stock above mentioned was the property of the estate; that the stock was purchased with money belonging to the said Elizabeth Wilcox, now deceased. The Public Service Company filed an answer in the case asserting that it was interested only as a stakeholder and asking that the ownership of the stock be determined in order that it might be protected in future transactions in respect thereto.

The defendants contend that the trial court erred in permitting the plaintiff to testify relative to certain communications and transactions had by him with the de-

ceased. It is contended that his testimony should have been excluded under section 271, O. S. 1931, which, so far as material to this case, is as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person. * * *"

The trial court in rendering his opinion and judgment in the case took the view that the cause of action was upon the stock, and not upon the $2,200 gift acquired immediately from the deceased; and that, giving the word "immediately" its proper meaning, the inhibition of the statute would not apply to the testimony of the plaintiff respecting transactions and communications with the deceased relative to the alleged gift. The court, therefore, overruled the motion to strike the evidence of the plaintiff on the theory that the facts did not bring the case within the inhibition of the statute. And in support of that theory the defendant in error cites the case of Grosshart v. McNeal, Adm'x, 95 Okla. 102, 105, 218 P. 329, 332, which discusses that particular phase of the statute, as follows:

"* * * This and similar statutes have been the subject of discussion in many cases in this court, in the Supreme Court of Kansas, and other states. We think that the rule has been well settled that a statute such as this, that has for its purpose disqualifying a witness to submit testimony in his own behalf, is not to be extended by construction; that the statute is to be strictly construed. Interest in the result of litigation does not operate to disqualify a party as a witness in the absence of a statute so providing. Where a statute such as here undertakes to disqualify a person from testifying in his own behalf, disqualification arises only upon the specific conditions named in the statute itself. * * * The word 'immediately,' as used in this statute, is one of everyday use and understanding. Unless it is permissible to give the statute an extended meaning, the word 'immediately' means directly, or without an intermediary."

We find no fault with the construction placed upon the statute by the foregoing opinion, but, in the instant case, the plaintiff brought the action to determine who is the owner of the stock, and that involves but one question: With whose money was the stock purchased? The burden was upon the plaintiff to establish his title to the

money, which he claims the deceased gave him. This involves a transaction had by the plaintiff with the deceased, and it was error to permit the plaintiff to testify in respect to same.

However, the trial court in discussing the evidence relative to the ownership of the money invested in the stock found the evidence to be "clear and cogent and decisive that the money in question that went to pay for the stock belonged to Otis, and the *stock was his and the stock now is his*"; and after a careful examination of the record, we have reached the same conclusion, and have done so without considering any of the plaintiff's testimony respecting the transaction. In other words, we regard the testimony of the various other witnesses conclusive evidence of the facts sought to be proven by the plaintiff, and that the admission of the objectionable testimony was cumulative and therefore harmless error.

Section 3206, O. S. 1931, embodying the harmless error doctrine, is as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

This court has repeatedly held that a case will not be reversed for error in the admission or rejection of evidence, unless it appears from an examination of the entire record that such error resulted in a miscarriage of justice or constitutes a substantial violation of constitutional or statutory right. As already indicated we find sufficient competent evidence in the record to sustain the judgment of the trial court, and having considered the other contentions of the plaintiffs in error and finding them without substantial merit, and finding no error in the record that would justify a reversal of the case, the judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY and HURST, JJ., concur.