The FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, OKLAHOMA, Executor of the Estate of Stratton B. Kernodle, Deceased, Appellant,

v.

Edwina McKEEL, Appellee.

No. 9141.

United States Court of Appeals
Tenth Circuit.

Sept. 5, 1967.

Rehearing Denied Oct. 20, 1967.

Merton M. Bulla and R. C. Jopling, Jr., Oklahoma City, Okl. (Fred A. Gipson and Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, Okl., on the brief), for appellant.

Gus Rinehart, Oklahoma City, Okl., for appellee.

Before PHILLIPS, LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

This litigation was commenced by appellee, Edwina McKeel, with the filing of a complaint against Merrill, Lynch, Pierce, Fenner and Smith, Inc. The complaint alleged that she was the owner of certain shares of corporate stock which were held by Merrill, Lynch and that it had failed, after demand, to deliver such shares of stock to her. She prayed for recovery of the stock and the dividends that had been paid thereupon. Merrill, Lynch answered, setting out in detail the facts surrounding such shares of stock, denying any claim to ownership of the stock, and counterclaimed by way of interpleader, offering to deliver the stock into the registry of the court and made appellant a cross-defendant in the interpleader. Appellant answered the interpleader alleging that it was the executor of the estate of one Dr. Kernodle and, as such, was the owner of the questioned stock. The trial court decreed the stock to be the property of appellee and this appeal followed.

Those facts about which there is no dispute are as follows: Edwina McKeel and Dr. Stratton E. Kernodle, of whose estate appellant is executor, started keeping company in the early 1940s. Kernodle had an account with Merrill, Lynch, Pierce, Fenner and Smith, Inc., and at his direction the firm from time to time purchased stocks which it held in "street name"[1] on margin. Monthly statements were issued by the firm to Kernodle, showing stock held by it for him, any changes in the account occasioned by stock having either been sold or purchased and dividends credited. In 1945 an account with Merrill, Lynch was opened in the name of Mrs. Edwina McKeel and was handled in the same manner as Kernodle's account had been handled, with McKeel receiving monthly statements. In 1948 McKeel signed a power of attorney authorizing Kernodle to do anything with respect to her account that she might do herself. From that time until January 5, 1950, the "McKeel" account was handled by Merrill, Lynch the same as it had been handled before the power of attorney was executed, except that statements were mailed to McKeel in care of Kernodle. On January 5, 1950, under authority given in the power of attorney, Kernodle transferred the "McKeel" account to his own account and paid off the marginal indebtedness owed on the "McKeel" account ($7,263.12) and thereafter until his death the brokerage firm managed the stocks thus transferred under the "Kernodle" account and as a part of his portfolio.

Technically, there are two separate suits here, the first upon the complaint filed by appellee against Merrill, Lynch, and, second, the interpleader suit by the stakeholder of the shares of stock, Merrill, Lynch, against the claimants to ownership of the stock, appellant and appellee. This becomes important in our disposition of the first two points urged by appellant.

After filing its answer to the interpleader phase of the case, appellant filed a motion to dismiss and attacked the jurisdiction of the court because of a lack of diversity of citizenship. In this motion appellant urged that it was an indispensable party to the original suit and, if joined in the suit as a defendant, diversity of citizenship would be destroyed, which situation required a dismissal. Merrill, Lynch is a Delaware corporation, appellant bank is organized under the laws of the United States with its prin-

---

1. The stock is carried in the name of the brokers.

cipal place of business in Oklahoma and appellee is a citizen of Oklahoma. This motion to dismiss is ambiguous in that it seeks "to dismiss the action" and we are unable to tell whether it is directed to the suit as originally filed by appellee or to both that complaint and the interpleader suit. The order overruling the motion does not enlighten us in this regard because the trial judge gave no reasons for his decision.

We agree with appellant that it was an indispensable party to the original suit because of its claimed ownership of the stock in question by virtue of being executor of the Kernodle will.[2] In this instance the joinder of the indispensable party as a defendant would oust the court of diversity jurisdiction, thus a dismissal of that part of the litigation would be compelled.[3] However, that situation does not compel a dismissal of the interpleader because the parties are there aligned so as to provide diversity, the Delaware corporation on one side and the two claimants, both citizens of Oklahoma, on the other side.[4] With this setting the motion to dismiss should have been sustained as to the complaint and overruled as to the interpleader.[5] Such a result leaves the court with all proper parties before it in the interpleader phase to enable it to make an adjudication of the issue of ownership of the stock.

Appellant's next point goes to the application of the so-called Oklahoma Deadman's Statute[6] to McKeel's qualification as a witness in the case. The trial court correctly held that the state statute was binding upon the Federal Courts in the State of Oklahoma[7] but held it did not bar McKeel from testifying in this case. We agree that the statute is binding on the Federal Courts but disagree with the trial court in its refusal to apply the statute to McKeel. The trial court apparently viewed the case only as a contest between McKeel and Merrill, Lynch. As we have indicated, in reality the litigation before the court was between appellee and appellant, with appellee acquiring whatever claim to the ownership of the stocks she may have had from the deceased person represented in the litigation by appellant, as executor. Without doubt the state statute prevented McKeel from testifying about "any transaction or communication" between her and Kernodle. This conclusion does not necessarily dispose of this appeal but we must view the remaining evidence in the record to determine if it is sufficient to sustain the findings of the trial court.[8]

The trial court specifically found that "the deceased gave [Mrs. McKeel] the money with which to purchase said stocks or with his money purchased said stocks in her name * * *." Appellant contends that a "resulting trust" was thereby created, of which Dr. Kernodle held the equitable title, and that when the stock was transferred to his ac-

2. The books and records kept by Merrill, Lynch clearly reflect that the shares of stock, from 1950 until the date of Kernodle's death, were kept in Kernodle's portfolio and carried in the account of Kernodle.

3. Moore, F.P. ¶ 19.05(2).

4. This interpleader is brought under 28 U.S.C. § 1332 and meets the jurisdictional requirements of that statute. See Brisacher v. Tracy-Collins Trust Co., 10 Cir., 277 F.2d 519, and cases there cited.

5. See Moore, F.P. ¶ 13.36, n. 4a.

6. 12 Okla.St.Ann. § 384 (1961). The pertinent part reads as follows:
"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; * * *."

7. Wright v. Wilson, 3rd Cir., 154 F.2d 616, cert. denied 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed. 640; Moore, F.P. ¶ 43.06.

8. Mackey v. Channel, Okl.Sup., 370 P.2d 834; Diechman v. Harris, 199 Okl. 33, 182 P.2d 751; Wilcox v. Wilcox, 180 Okl. 228, 68 P.2d 494.

count, the legal and equitable titles merely merged. It does appear to be the rule that "normally the payor of the purchase price of property is entitled to be decreed to be the beneficiary of a trust, if the conveyance is not absolute and runs to another with the consent of the payor," and that "Although most of the cases concern realty, the doctrine applies to personalty as well." [9] The purchase-money resulting trust rule has been recognized in dictum by Oklahoma.[10] The facts of this case would, then, seem to raise an inference of a purchase-money resulting trust. It is, however, an inference only, and it is a rebuttable inference.[11] And it is at this point the appellant is faced with the trial court's pointed finding that the purchase of the stocks in Mrs. McKeel's name by Dr. Kernodle "was a bona fide gift or remuneration for service rendered to the deceased by [Mrs. McKeel], * * *." If a valid gift was made of the stocks, the inference of a purchase-money resulting trust has been rebutted. The ultimate determination, then, is whether, considering all the competent evidence in the record, the trial court's finding of a bona fide gift was correct; and in making that determination we are guided by the admonition of Rule 52(a), F.R. Civ.P., that "Findings of fact shall not be set aside unless clearly erroneous * * *." [12] Apart from the testimony of Mrs. McKeel, the record is very nearly devoid of any evidence supporting the finding of a gift. Nor is there evidence showing that Mrs. McKeel and Dr. Kernodle had such a relationship that a gift should be presumed.[13] In view of the record—when Mrs. McKeel's incompetent testimony is disregarded—we are compelled to the conclusion that there is not sufficient evidence to support the trial court's finding of a gift.

The judgment appealed from is reversed and the case is remanded with directions to grant a new trial and thus afford appellee an opportunity to produce any available competent evidence to prove her cause of action.

Rehearing denied; PHILLIPS, dissenting.

9. Bogert on Trusts, § 454, pp. 513–515.

10. See Belton v. Buesing, 240 Or. 399, 402 P.2d 98, 101, footnote 4.

11. Bogert on Trusts, § 454, p. 520.

12. Wells v. Ruiz, 10th Cir., 372 F.2d 119; Don J. Cummings Co. v. Aluminum Manufacturing Corp., 10th Cir., 371 F.2d 118; Southwestern Investment Co. v. Cactus Motor Co., 10th Cir., 355 F.2d 674; Wood v. Western Beef Factory, Inc., 10th Cir., 378 F.2d 96.

13. Bogert on Trusts, § 459, p. 587.