419 F.2d 1291
 Edwina W. McKEEL, Plaintiff-Appellant,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,
Defendant-Appellee, The First National Bank and Trust
Company of Oklahoma City, Oklahoma, Executor of the Estate
of Stratton E. Kernodle, Deceased, Cross-Defendant-Appellee.
 No. 223-69.
 United States Court of Appeals Tenth Circuit.
 Dec. 18, 1969.
 
 Gus Rinehart of Rinehart, Morrison, Cooper & Stewart, Oklahoma City, Okl., for plaintiff-appellant.
 Donald L. Cooper of Rainey, Flynn, Welch, Wallace, Ross & Cooper, Oklahoma City, Okl., entered an appearance for defendant-appellee.
 R. C. Jopling, Jr., of Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Oklahoma City, Okl. (Merton M. Bulla, Oklahoma City, Okl., on the brief) for cross-defendant-appellee.
 Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This controversy relates to the ownership of certain corporate stocks held by defendant-appellee Merrill Lynch, Pierce, Fenner, and Smith, Inc., as stockbrokers and claimed by plaintiff-appellant Mrs. McKeel and by the cross-defendant-appellee First National Bank and Trust Company of Oklahoma City, Oklahoma, as executor of the estate of a Dr. Kernodle. In First National Bank and Trust Company of Oklahoma City, Okl. v. McKeel, 10 Cir., 387 F.2d 741, we reversed a judgment in favor of Mrs. McKeel on the ground that she had been permitted to testify in violation of the Oklahoma Deadman's Statute, 12 Okl.St.Ann. 384. On retrial the district court held that the Bank was entitled to the stocks and ordered Merrill Lynch to deliver the stocks to the Bank. Mrs. McKeel has appealed.
 
 
 2
 The basic facts are adequately stated in our first opinion. See 387 F.2d 741. It is sufficient to note here that the stocks were purchased in the 1940s and held in an account at Merrill Lynch in the name of Mrs. McKeel and that in 1950 the account was transferred to the deceased under a power of attorney executed by Mrs. McKeel. In the first trial, the district court found that the deceased either gave Mrs. McKeel the stocks or bought them with his money in her name. We said that the facts would 'seem to raise an inference of a purchase-money resulting trust' for the benefit of the deceased; that the inference could be rebutted by a valid gift; and that there was no evidence from which a gift could be presumed except Mrs. McKeel's incompetent testimony. We remanded the case for a new trial to 'afford appellee (Mrs. McKeel) an opportunity to produce any available competent evidence to prove her cause of action.' 387 F.2d 741 at 744.
 
 
 3
 In its findings at the conclusion of the first trial, the district court commented upon the unsatisfactory testimony of Mrs. McKeel but held that the evidence was sufficient to establish a gift or remuneration for services. The then testimony of Mrs. McKeel was that she gave the deceased the money with which to purchase at least part of the stocks. She said that the money was given in the form of checks on her account in an Oklahoma City bank and was derived in part from payments which she had received from her divorced husband. The bank records did not show the checks.
 
 
 4
 At the retrial the counsel for the Bank waived the Deadman's Statute by cross-examining Mrs. McKeel on her transactions with the deceased. She testified that she had given money to Dr. Kernodle in the form of cashier's checks for stock purchases. Her former contrary testimony was called to her attention. The trial court suggested that she read the transcript of the former proceedings and talk to her lawyer. A recess was taken to permit her to do so. When the trial resumed, she did not again take the stand.
 
 
 5
 The trial court found that the stocks were purchased by the deceased through the use of his personal funds; that the plaintiff did not at any time own the stocks or acquire them 'by virtue of purchase, gift, devise, or otherwise'; that at the time of the transfer of the stocks to the deceased the plaintiff had no 'right, title or interest' therein; and that 'in the main her (Mrs. McKeel's) testimony is found to be completely false.'
 
 
 6
 Our examination of the record discloses ample evidence to sustain the court's findings. We can well understand the difficulty which the court had with Mrs. McKeel's testimony. It was contrary to record evidence and was self-contradictory. In any event, the credibility of a witness is for determination by the trier of the fact and not by the appellate court. See Wood v. Western Beef Factory, Inc., 10 Cir., 378 F.2d 96, 99, and DeVilliers v. Atlas Corporation, 10 Cir., 360 F.2d 292, 294.
 
 
 7
 Mrs. McKeel now contends that the possession of personal property, here the account, raises a presumption of ownership; that a gift is presumed from the relationship of the parties; and that the power of attorney could not be used by the deceased for his own benefit. Our first decision holds that the facts disclose an inference of a purchase-money resulting trust. None of the evidence adduced at the second trial rebuts that inference. The deceased paid for the stocks standing in Mrs. McKeel's name in the Merrill Lynch account. When the account was transferred to his name the equitable title merged with the legal title. The power of attorney was used as a facile device to attain such merger.
 
 
 8
 Affirmed.